943 P.2d 729

**Virginia M. LLOYD and Willie Lee Lloyd, individually and as wife and husband, Plaintiffs–Appellants/Appellees–Cross–Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Defendant–Appellee/Appellant–Cross–Appellee.**

Nos. 1CA–CV95–0140, 1CA–CV95–0358.

Court of Appeals of Arizona, Division 1, Department C.

Oct. 1, 1996.

Review Denied Sept. 16, 1997.*

---

* Jones, V.C.J., recused himself and did not participate in the determination of this matter.

Jennings, Strouss & Salmon, P.L.C. by Gary L. Stuart, Jay Fradkin and James M. Ackerman, Phoenix, for Plaintiffs–Appellants/Appellees–Cross–Appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Ralph E.

Hunsaker and Christopher Robbins, Phoenix, for Defendant–Appellee/Appellant–Cross–Appellee.

## OPINION

THOMPSON, Judge.

This appeal involves a third party insurance bad faith claim. Following our opinion in a previous appeal in this case, *Lloyd v. State Farm Mut. Auto. Ins. Co.*, 176 Ariz. 247, 860 P.2d 1300 (App.1992) (*Lloyd I* ), the trial court ruled that we established, as law of the case, that there was no contract out of which a bad faith claim could arise. It granted the defendant-insurance company's motion for summary judgment. We reverse. Contrary to the appellee's argument, we did not decide that issue in the prior appeal. There is an insurance contract at the heart of this case and thus there could be a viable bad faith claim.

## FACTS AND PROCEDURAL HISTORY

For purposes of this appeal, the facts are not disputed and can be extracted from our previous opinion:

On April 12, 1986, Virginia Lloyd was struck by a midget race car while in the pit area at Manzanita Speedway in Phoenix. She suffered massive injuries resulting in quadriplegia. The car was partly owned by George and Sharon Lane.

The Lanes had an automobile policy with State Farm for their Cadillac as well as a homeowners policy with State Farm Fire & Casualty. They purchased both policies through the same State Farm agent. They did not attempt to obtain insurance coverage on the midget car. They knew they had no insurance on it, and they understood that they could not get coverage for it because it was a race car.

. . . .

The Lloyds filed suit against the Lanes. Mr. Lane was served with the summons and complaint on November 10, 1987. He ignored the service, thinking the papers were from a previous suit in which he was not a party. On December 28, 1987, the Lloyds filed an application for entry of default against the Lanes. They sent a copy of the default application to the Lanes and to State Farm, both of whom received their copies on December 29, 1987. The default was to be effective January 12, 1988.

Upon receiving the application for default, Mr. Lane called the Lloyds' attorney who advised him to call his insurer. Lane then called his State Farm agent, who in turn advised him to call the State Farm claims department. Lane contends that he called the claims department no later than January 1, 1988 regarding the default. He testified that somebody told him over the telephone that State Farm would "take care of it." Lane said that he took these words to mean that State Farm would take care of the case, including the pending default, and that he need do nothing further.

. . . The default against Lane became effective on January 12, 1988, well before an answer was filed.

Ten days later, on January 22, 1988, State Farm hired attorney Robert Beltz to defend the Lanes. State Farm sent the Lanes a reservation of rights letter for the first time on January 28, 1988, and a second letter on February 16, 1988, advising the Lanes that it had hired Beltz to represent them but still reserved the right to deny coverage. The letter also stated that State Farm would begin its investigation into whether coverage existed. This letter warned the Lanes that there was a possibility of judgment in excess of coverage and that they could employ their own attorney to look after their personal interests. State Farm also simultaneously informed Beltz that it was reserving its rights and that, after it investigated, it would advise him of its decision on coverage.

Beltz filed an answer on the Lanes' behalf on January 27, 1988, thinking that he had an understanding with the Lloyds' attorney that the Lloyds would not enforce the default. On April 22, 1988, Beltz filed a motion to set aside the January 12 default, which the trial court eventually denied on July 20, 1988.

. . . .

Meanwhile, on April 8, 1988, the Lloyds' attorney served on Beltz a settlement demand for the amount of any insurance policy. The offer was made to expire May 8, 1988. The parties conceded that this was, in essence, an offer to settle for $50,000. Beltz forwarded this offer to State Farm on April 13, noting that this was his first indication that the Lloyds planned to enforce the default.

Neither Beltz nor State Farm sent a copy of this settlement demand to the Lanes. Beltz did not do so immediately because he had not yet communicated with the Lanes and had been unable to contact Mr. Lane. Beltz did eventually discuss the settlement letter with the Lanes on a date not later than April 22, 1988. The extent of their discussion is unknown.

... On April 22, 1988, the State Farm claim committee recommended that State Farm formally deny the claim because it concluded that there was in fact no coverage.

On May 6, 1988, State Farm rejected the $50,000 settlement demand and instructed Beltz to withdraw and simultaneously advised the Lanes to obtain their own counsel. The Lanes received this letter after the May 8, 1988 expiration of the Lloyds' $50,000 settlement demand.

On July 20, 1988, the trial court denied Beltz's motion to set aside the default. The result was that the Lloyds took default judgment against the Lanes in the amount of $10,000,000 plus costs. The Lanes eventually assigned to the Lloyds their rights against State Farm. The Lloyds and Lanes then filed suit against State Farm.

The parties filed cross-motions for summary judgment on issues related to assumption of the duty to defend. The court granted State Farm's motion and denied the plaintiffs' motion. The Lloyds appealed. . . .

176 Ariz. at 248–49, 860 P.2d at 1301–02.

In support of the summary judgment, State Farm argued

that as a matter of law it can have no liability for assumption of a duty to defend in the absence of an insurance policy covering the accident. It asserts, further, that no negligence action lies against an insurer for assuming a duty to defend when, as here, there is in fact no coverage at all.

176 Ariz. at 250, 860 P.2d at 1303. This court reversed the judgment. We held that, even though it was conceded that the Lanes' automobile policy did not cover the accident, there were facts from which a jury could find that State Farm had assumed the defense and had been deficient in that defense. *Id.* at 251, 860 P.2d at 1304. We stated: "When a person voluntarily undertakes an act, even when there is no legal duty to do so, that person must perform the assumed duty with due care and is liable for any lack of due care in performing it." *Id.* at 250, 860 P.2d at 1303 (citing, *inter alia, Restatement (Second) of Torts* § 323 (1965)); *but see Miel v. State Farm Mut. Auto. Ins. Co.,* 185 Ariz. 104, 109–11, 912 P.2d 1333, 1338–40 (App.1995), *review granted,* (March 19, 1996) (no cause of action in negligence for insurer's handling of a claim against its insured). We found no reason to except insurance companies from this rule, even when the pertinent policy did not cover the accident. 176 Ariz. at 251, 860 P.2d at 1304.

However, we rejected the Lloyds' argument that State Farm was estopped to deny coverage by attorney Beltz's actions, as in *Parsons v. Continental Nat'l Am. Group,* 113 Ariz. 223, 550 P.2d 94 (1976), where the supreme court held that the insurer was estopped from asserting an intentional act exclusion. We stated: "The Lloyds cannot use estoppel to create policy coverage when none in fact exists under the policy. Estoppel is not a substitute for insurance coverage." 176 Ariz. at 253, 860 P.2d at 1306. We also denied the Lanes' request for attorneys' fees under A.R.S. § 12–341.01(A). *Id.*

On remand, State Farm moved for partial summary judgment seeking to dismiss the breach of contract and bad faith claims, arguing that *Lloyd I* established as law of the case that the Lloyds' claims did not arise out of any contract. The trial court agreed with State Farm:

The Court of Appeals in [*Lloyd I*] ruled that Defendant herein assumed a duty to defend, when no policy coverage existed, and may have acted negligently in the exercise of that duty. The Court of Appeals went on to hold that "This suit arises not from contract but from an asserted gratuitous assumption of duty ..." At 253, 860 P.2d at 1306 i.e. a tort cause of action. This is the law of the case and this Court is bound accordingly.

Further, the parties in the instant motions do not dispute the fact that no policy of insurance contract for the automobile in question existed. Thus, Plaintiff cannot maintain a breach of contract cause of action. There simply was no contract to breach.

Given the absence of a contract, the Court is persuaded that the relevant case law establishes that the cause of action for breach of the implied covenant of good faith and fair dealing, which alleges a tort of bad faith, cannot stand. In this regard the Court finds *Deese v. State Farm,* 172 Ariz. 504, 506, 838 P.2d 1265, 1267 (1992) controlling:

"In *Noble v. National Life Insurance Company,* 128 Ariz. 188, 624 P.2d 866 (1981), this Court first recognized a tort of bad faith. We concluded "That there is a *legal duty implied in an insurance contract* that the insurance company must act in good faith in dealing with its insured on a claim, and a violation of that duty of good faith is a tort." at 506, 838 P.2d at 1267

"In short the implied covenant of good faith and fair dealing requires that an insurer treat its insured fairly in evaluating claims. *"The insurance contract and the relationship it creates* contain more than the company's bare promise to pay certain claims when forced to do so; implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured." " at 507, 838 P.2d at 1268 emphasis added.

No contractual relationship ever existed between the Lanes and Defendant State Farm with regard to the automobile in question. The Court finds that the presence of an insurance contract is a fundamental prerequisite for a tort bad faith claim. That fundamental prerequisite is absent here.

The court entered formal judgment on the partial summary judgment, which it certified final pursuant to Rule 54(b), Ariz. R. Civ. P. The Lloyds timely appealed.

## DISCUSSION

### A. Subject Matter Jurisdiction

 As a preliminary matter, we question whether this court has subject matter jurisdiction over the appeal in 1 CA–CV 95–0140, although neither party has raised this issue. *See Musa v. Adrian,* 130 Ariz. 311, 312, 636 P.2d 89, 90 (1981) (this court must examine its jurisdiction *sua sponte*). A judgment made substantively final by operation of Rule 54(b) is statutorily appealable pursuant to A.R.S. § 12–2101(B). *Pulaski v. Perkins,* 127 Ariz. 216, 217, 619 P.2d 488, 489 (App.1980). However, not all partial summary judgments can be made appealable by Rule 54(b) certification; that rule requires that the partial judgment dispose of "at least one separate claim of a multi-claim action." *Davis v. Cessna Aircraft Corp.,* 168 Ariz. 301, 304, 812 P.2d 1119, 1122 (App.1991). We review *de novo* the trial court's determination whether a judgment is "final" for Rule 54(b) purposes in that it disposes of one distinct "claim." *Id.*

 The question in this case is whether the trial court's partial summary judgment on the bad faith count disposed of a separate claim when the negligence count was still pending trial. If not, the partial summary judgment could not be made "final" and appealable simply by insertion of Rule 54(b) language. *Id.* at 305, 812 P.2d at 1123. In *Davis,* we concluded that we had no subject matter jurisdiction over a Rule 54(b) partial summary judgment dismissing a strict liability claim "when a negligence claim arising from the same conduct remained." *Id.* Similarly, in this case, we conclude that the Rule 54(b) certification of finality was also erroneous. The facts underlying both the bad faith and negligence counts have significant overlap. Furthermore, plaintiffs would

be limited to a single recovery for their core compensatory damages if both counts were presented to a jury. Under these circumstances, the bad faith count was not a single "claim," but "a separate, alternative theory of recovery." *Id.* As such, the bad faith count could not be considered a separate "claim" that would become final by Rule 54(b) certification.

■ When this court raised the jurisdictional issue at oral argument in this case,[1] the parties responded that, even if the Rule 54(b) certification of finality were erroneous in this case, that defect was cured by entry of final judgment and the subsequent appeal in 1 CA–CV 95–0358 that was consolidated with the original appeal in 1 CA–CV 95–0140. The parties analogized this situation to cases in which a premature notice of appeal is filed from an unsigned minute entry, and this court obtains jurisdiction over the appeal by the subsequent filing of a signed, formal written judgment. *See* Rule 58(a); *Eaton Fruit Co. v. California Spray–Chemical Corp.,* 102 Ariz. 129, 426 P.2d 397 (1967). The parties also contended that, because any interlocutory orders "merge" into a final judgment, the filing of the second appeal gives us jurisdiction over the first. *See* A.R.S. § 12–2102(A). However, we conclude that these principles do not apply in this case, for several reasons.

First, the *Eaton Fruit* reasoning has been limited to appeals from formally unappealable orders, as opposed to substantively unappealable orders. *Pulaski v. Perkins,* 127 Ariz. at 217–18, 619 P.2d at 489–90 ("no opinion of either our supreme court or this court holds that the suspension and revesting process [of appellate jurisdiction under *Eaton Fruit*] is appropriate in a case where finality is lacking by reason of multiple claims or parties.") In *Pulaski,* we made the following observations about the differences between formal and substantive defects in appeals:

> In our opinion, there are sufficient distinctions between an attempted appeal which is imperfect by reason of a Rule

58(a) deficiency and an appeal which is invalid by reason of a Rule 54(b) deficiency so that *Eaton Fruit* should be held inapplicable to cases such as the present one. The 58(a) deficiency made curable by *Eaton Fruit* is a defect only in the form of a presumably substantive appealable order. A 54(b) deficiency, on the other hand, is a defect of substance because A.R.S. § 12–2101(B) makes appealable only "final" judgments and, unless the particular judgment in question is otherwise appealable, there would be no statutory basis for bringing the appeal.

*Id.* at 218, 619 P.2d at 490 (footnote omitted). Therefore, we do not use the *Eaton Fruit* analogy to cure the defect in this case by the filing of the final judgment.

Second, we note that the appeal from final judgment was not filed by the same parties as the first appeal. In CV 95–0140, plaintiffs appealed from entry of partial summary judgment; in CV 95–0358, defendants appealed from the final judgment. In the latter appeal, plaintiffs cross-appealed, but specifically limited our jurisdiction in that cross-appeal to the question whether interest should have been awarded on the final judgment. Thus, this is not a case in which we might have obtained proper subject matter jurisdiction over the partial summary judgment by a timely amended notice of appeal or a new cross-appeal by plaintiffs from the final judgment on that basis. *See* A.R.S. § 12–2102(A). We therefore conclude that we do not have appellate jurisdiction on any of these alternative bases.

■ Because Rule 54(b) certification of the partial summary judgment on the bad faith count was improper in this case, this court does not have appellate subject matter jurisdiction over the appeal from the partial summary judgment. We therefore must dismiss the appeal in CV 95–0140. We note, however, that the parties properly raised the bad faith issue in the prior appeal, and this court failed to address it on the merits. *See Lloyd I,* 176 Ariz. at 250, 860 P.2d at 1303. Thus,

---

1. To be fair to counsel, we note that the parties had no notice prior to oral argument that this court was concerned about its appellate jurisdiction. Thus, they did not have an opportunity to research this issue before argument.

the parties no longer have an adequate remedy by appeal on this issue. *See* Rule 1, Arizona Rules of Procedure for Special Actions. Furthermore, we believe that the issue presented is one of first impression and statewide importance. Therefore, in the exercise of our discretion, we have elected to treat this appeal as a petition for special action, despite our lack of appellate jurisdiction, and to accept special action jurisdiction. *See Brown v. State*, 117 Ariz. 476, 477, 573 P.2d 876, 877 (1978) (court may grant relief by special action even though motion or writ is inappropriately titled); *State v. Perez*, 172 Ariz. 290, 292, 836 P.2d 1000, 1002 (App.1992) ("[a]lthough we do not have appellate jurisdiction to review this issue, it is within our discretion to consider the matter as a special action"); A.R.S. § 12–120.21(A)(4) (expanding court's jurisdiction to include special actions without regard to appellate jurisdiction). We therefore address the merits of the issues raised in CV 95–0140.

### B. Law of the Case

State Farm argues that in *Lloyd I* we held that there was no insurance contract involved in this matter, and that this ruling is law of the case. As a consequence, there could be no cause of action for breach of contract,[2] nor for bad faith, because such claims arise out of a violation of the insurance contract's implied covenant of good faith and fair dealing. *E.g., Noble v. National Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981).

Under the doctrine of law of the case, if an issue has been finally decided by an appellate court, the decision "binds the trial court (and the appellate court) in subsequent proceedings in the same action." *Dunlap v. City of Phoenix*, 169 Ariz. 63, 66, 817 P.2d 8, 11 (App.1990). Law of the case is inapplicable here. Our prior opinion did not hold that the insurance policy played no role in this case.

It cannot be disputed that a contract—the Lanes' automobile insurance policy with State Farm—formed the context for this litigation. Indeed, when George Lane was presented with the papers threatening the entry of a default judgment against him, he did not call just any insurance company; he called

the agent who sold him his State Farm policy. The agent, in turn, instructed him to call the State Farm claims department.

Further, State Farm referred to the automobile policy in its letters informing the Lanes that it had hired counsel for them under a reservation of rights. In assuming this defense, however, State Farm questioned whether the claim was covered under the Lanes' policy:

> Since the vehicle involved in this accident is not the described vehicle for this policy, we are questioning that any coverage at this time exists. This policy states that coverage is for a 1981 Cadillac Eldorado. The vehicle involved in this accident meets none of the definitions in your policy.
>
> 1. Since you are part owner of this vehicle, it does not appear that coverage under your non-owned vehicle portion of your policy applies.
>
> 2. This does not fit the definition of a substitute vehicle.

Because of the questionability of coverage, State Farm reserved its right to deny coverage under the policy:

> [Y]ou are hereby advised any action heretofore or hereafter taken by this Company or any of its agents, claim representatives, or employees investigating, adjusting, or negotiating for settlement, or litigating any of the matters arising as a result of the above accident shall not be deemed a waiver of any of the rights of the Company under a contract of insurance nor the rights of this Company to deny insurance coverage at any time for reasons known or unknown at this time.

State Farm's letter informing the Lanes that it had hired an attorney to represent them reiterates the connection with their automobile policy:

> We have forwarded a copy of your claim file to Robert R. Beltz.... We have asked this attorney to proceed with your defense in the lawsuit brought against you by Viriginia [sic] M. Lloyd and Willie Lee Lloyd.... Under the terms of your policy, the attorney is entitled to your com-

---

**2.** In their opening brief, the Lloyds expressly abandoned their breach of contract claim.

plete cooperation throughout the handling of this litigation....

....

As we have previously advised you, we specifically reserve our right to deny coverage to you (and anyone claiming coverage under the policy). Based on the information available to us at this time, it is questionable that the vehicle involved in the accident at Manzanita Speedway in April, 1986, qualifies for coverage under your policy as a temporary substitute car, newly acquired car, or non-owned car.

The defense of this action by the attorney we have selected on your behalf is not to be considered a waiver of such policy defense or any policy defense which may be involved in this case....

Clearly, then, a contract is involved in this matter. The pertinent question is whether the Lanes' claims against State Farm arose out of that contract.

■ Under a liability policy, the insurer assumes two main express responsibilities: the duty to indemnify and the duty to defend. *See, e.g., State Farm Mutual Auto. Ins. Co. v. Peaton,* 168 Ariz. 184, 192, 812 P.2d 1002, 1010 (App.1990). These two duties are separate obligations. *Paulin v. Fireman's Fund Ins. Co.,* 1 Ariz.App. 408, 410–11, 403 P.2d 555, 557–58 (1965). However, just because a claim is made against the insured does not mean that the insurer must automatically defend. "[T]he insurer is under an obligation to defend only if it would be held bound to indemnify the insured in case the injured person prevailed upon the allegations of his complaint." *Id.* at 410, 403 P.2d at 557 (quoting C. T. Drechsler, Annotation, *Allegations in Third Person's Action Against Insured as Determining Liability Insurer's Duty to Defend,* 50 A.L.R.2d 458, 464 (1956)). Thus, if the insurer determines that the claim is not covered, it has the option of not accepting the defense. *Kepner v. Western Fire Ins. Co.,* 109 Ariz. 329, 332, 509 P.2d 222, 225 (1973).

Here, it is clear from State Farm's letters to the Lanes that State Farm was aware of facts that called into question whether the Lanes' policy covered the accident. State Farm therefore had the option to decline the defense. Although it eventually did exercise this option, State Farm initially accepted the defense. This assumption was "gratuitous" because, as it turns out, the policy does not cover the accident. The fact that State Farm gratuitously assumed the defense does not mean that the duty to defend is unconnected to the policy. Rather, that term was used because under the circumstances the policy itself did not require State Farm to assume the defense.

Indeed, we did not hold in our previous opinion that the contract was irrelevant in this case; we were not asked to consider that issue. State Farm had been granted judgment on the basis that "as a matter of law it can have no liability for assumption of a duty to defend *in the absence of an insurance policy covering the accident." Lloyd I,* 176 Ariz. at 250, 860 P.2d at 1303 (emphasis added). To defeat summary judgment, the Lloyds argued that they could prevail on a gratuitous assumption theory. In order to gain reversal of the summary judgment, all the Lloyds had to do was demonstrate a triable issue; they did not have to prove their entire case. *See* Rule 56(c), Ariz. R. Civ. P. (summary judgment to be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law"). State Farm's motion did not argue that the Lloyds lacked evidence to establish an element of their claim. *Cf. Orme School v. Reeves,* 166 Ariz. 301, 310, 802 P.2d 1000, 1009 (1990). Thus, the fact that we decided the case on negligence grounds did not preclude the Lloyds from pursuing other theories. We specifically "address[ed] only those issues which are dispositive of this appeal." *Lloyd I,* 176 Ariz. at 250, 860 P.2d at 1303. In so doing, we consistently noted that the insurance contract did not cover the accident, but we did not state that there was no contract.[3]

3. Examples from the opinion bear this out:
"The main issue we are asked to determine in this appeal is the liability of an insurance company for assuming a defense when *no poli-*

*cy coverage* truly existed. In summary, we hold that an insurer's voluntary assumption of the duty to defend may give rise to a cause of action for derelictions in that defense even

 We also did not hold that State Farm could not be held liable for bad faith.[4] The essence of the prior opinion was that State Farm could be held liable for derelictions in its assumed defense of the Lanes even though there was no actual coverage under the policy. 176 Ariz. at 248, 860 P.2d at 1301. It has consistently been held that an insurer can be held liable for bad faith even when it does not violate any express provision of the insurance contract. *Taylor v. State Farm*, 185 Ariz. at 176, 913 P.2d at 1094; *Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 508, 838 P.2d 1265, 1269 (1992); *Rawlings v. Apodaca*, 151 Ariz. 149, 157, 726 P.2d 565, 573 (1986).

> Failure to perform the express covenant to pay the claim is not the *sine qua non* for an action for breach of the implied covenant of good faith and fair dealing.
>
> . . . .
>
> The implied covenant is breached, whether the carrier pays the claim or not, when its conduct damages the very protection or security which the insured sought to gain by buying insurance.

*Rawlings*, 151 Ariz. at 157, 726 P.2d at 573.

> The core of the duty of good faith and fair dealing is that the insurer act *reasonably* towards its insured. We grant that security from financial loss is a primary goal motivating the purchase of insurance. That security flows from the express covenants of the insurance agreement. However, the insured also is entitled to receive

the additional security of knowing that she will be dealt with fairly and in good faith. That security comes not from the express contractual terms, but from the implied covenant of good faith and fair dealing.

*Deese*, 172 Ariz. at 508, 838 P.2d at 1269 (emphasis in original) (citations omitted). *See also Parsons v. Continental Nat'l Am. Group*, 113 Ariz. at 229, 550 P.2d at 100 (although intentional act exclusion would have applied and thus incident was not covered, insurer was estopped to assert the exclusion; by placing its own interests before those of the insured while defending the action, it had not acted in good faith and was liable for the entire judgment entered against insured). The covenant of good faith and fair dealing can be breached even if the policy does not provide coverage. *Judah v. State Farm Fire & Casualty Co.*, 266 Cal. Rptr. 455, 463–65 (1990), *review dismissed as moot*, 281 Cal.Rptr. 766, 810 P.2d 998 (1991). Thus, State Farm could be found liable for bad faith despite the fact that, under the circumstances, the policy did not require it either to defend or indemnify the Lanes.[5]

### C. Attorneys' Fees

State Farm argues that our attorneys' fees ruling established that the Lloyds had no contract cause of action. It is true that we denied the Lloyds' request for attorneys' fees stating that "[t]his suit arises not from contract but from an asserted gratuitous assumption of duty, and hence A.R.S. § 12–341.01(A) is inapplicable," 176 Ariz. at 253,

---

when there is *no actual coverage*. 176 Ariz. at 248, 860 P.2d at 1301.

[State Farm] asserts, further, that no negligence action lies against an insurer for assuming a duty to defend when, as here, there is in fact *no coverage* at all. *Id.* at 250, 860 P.2d at 1303.

The Lloyds cannot use estoppel to create policy *coverage* when none in fact exists under the policy. Estoppel is not a substitute for insurance *coverage*. *Id.* at 253, 860 P.2d at 1306.

An insurer may assume a duty to defend even when there is, in fact, *no policy coverage* and may act negligently in exercising that duty." *Id.*

(All emphases added.)

**4.** The fourth issue the Lloyds raised in the prior appeal was whether State Farm was guilty of bad

faith in its defense of the Lanes. 176 Ariz. at 250, 860 P.2d at 1303. Stating that "[w]e address only those issues which are dispositive of this appeal," *id.*, we did not address bad faith. Our supreme court has recently reiterated that bad faith tort actions are based in the underlying contract. *Taylor v. State Farm Mutual Auto. Ins. Co.*, 185 Ariz. 174, 176, 913 P.2d 1092, 1094 (1996).

**5.** The Lloyds claim that State Farm acted in bad faith in failing to take action to set aside the default entered against the Lanes, refusing to settle or otherwise give due consideration to the Lanes' interests in settlement, misleading the Lanes as to its settlement posture, and failing to properly communicate its coverage decisions. The factual sufficiency of the Lloyds' bad faith claim is not an issue in this appeal, and we express no opinion as to its merits.

860 P.2d at 1306, but State Farm takes this statement too far. That appeal was decided on negligence grounds, and thus A.R.S. § 12–341.01(A) was inapplicable. The use of the word "suit" instead of "appeal," although possibly imprecise, should not be interpreted to mean that no contract was involved. There is indeed a contract involved in this case: the Lanes' automobile policy with State Farm. It was within the context of that contract that State Farm undertook the Lanes' defense in the first place. The issue we addressed in the previous appeal was whether State Farm could be held liable for negligently performing a gratuitously-assumed duty to defend. We were not asked in that appeal to decide whether the insurance policy was a basis upon which the Lloyds could prevail against State Farm. Having not been asked, we made no decision on that issue and our prior opinion therefore cannot be law of the case on that issue. *See Holcomb v. United States,* 622 F.2d 937, 940 (7th Cir.1980) (law of the case applies only to issues that the appellate court considered and resolved); *Powell–Cerkoney v. TCR–Montana Ranch Joint Venture, II,* 176 Ariz. 275, 279, 860 P.2d 1328, 1332 (App.1993) (doctrine does not apply "if the prior decision did not actually decide the issue in question, if the prior decision is ambiguous, or if the prior decision does not address the merits").

Moreover, even if A.R.S. § 12–341.01(A) was applicable to the prior appeal, the holding was correct: attorneys' fees were properly denied because the Lloyds were not yet the "successful party," as § 12–341.01(A) requires.[6]

## CONCLUSION

The Lanes had an automobile policy with State Farm. They were sued when an automobile they owned injured another. Reserving its right to deny coverage, State Farm initially assumed the defense, but committed "derelictions" in the defense. It later denied coverage and withdrew its defense, having decided (correctly) that the policy did not cover the accident because the automobile was a race car not covered by the policy. The Lloyds claim that State Farm's conduct towards its policyholders, the Lanes, and their legal predicament, was bad faith. The Lloyds should have been allowed to proceed with their bad faith claim. The partial summary judgment is therefore reversed, State Farm's request for attorneys' fees pursuant to A.R.S. § 12–341.01 is denied, and we remand for further proceedings.

CONTRERAS, P.J., and PATTERSON, J., concur.

6. Although there are circumstances in which a party can receive fees for a reversal of summary judgment, *Wagenseller v. Scottsdale Mem. Hosp.,* 147 Ariz. 370, 393–94, 710 P.2d 1025, 1048–49 (1985), the Lloyds were not in that position.