30 P.3d 639

Annette **MANTEROLA**, Plaintiff/Appellant,

v.

**FARMERS INSURANCE EXCHANGE, a California interinsurance exchange,** Defendant/Appellee.

No. 2 CA–CV 00–0108.

Court of Appeals of Arizona, Division 2, Department A.

Aug. 28, 2001.

Law Offices of A. Thomas Cole, By A. Thomas Cole, Casa Grande, for Plaintiff/Appellant.

Broening, Oberg, Woods, Wilson & Cass, P.C., By James R. Broening, Michael J. Ryan, and Kate Wagstaffe, Phoenix, for Defendant/Appellee.

## OPINION

PELANDER, J.

¶ 1 The trial court dismissed this third-party bad faith action, finding it barred by the statute of limitations. We are asked to decide whether the "final judgment accrual rule," adopted in *Taylor v. State Farm Mutual Automobile Insurance Co.*, 185 Ariz. 174, 179, 913 P.2d 1092, 1097 (1996), applies in a situation, unlike *Taylor*, in which an insurance carrier defends an insured under a reservation of rights and then contests coverage in a separate declaratory relief action (DRA), and in which the plaintiff, meanwhile, obtains a stipulated judgment against the insured pursuant to a *Morris* [1] agreement. The issue squarely presented here is when, in that scenario, does a bad faith claim against an insurer accrue, for statute of limitations purposes: when a judgment in the underlying personal injury action against the insured becomes final, or when a final determination of coverage is later made in the DRA?

¶ 2 The trial court concluded that the limitations period commenced on the earlier event and, therefore, granted defendant/appellee Farmers Insurance Exchange's motion to dismiss plaintiff/appellant AnNette Manterola's complaint pursuant to Rule 12(b)(6), Ariz. R. Civ. P., 16 A.R.S., Pt. 1. Because we agree with that ruling, we affirm.

## BACKGROUND

¶ 3 Although the pertinent facts are essentially undisputed, "[i]n reviewing a trial court's dismissal of a claim ..., we accept the allegations in the complaint as true and resolve all inferences in favor of the plaintiff." *Southwestern Paint & Varnish Co. v. Arizona Dep't of Envtl. Quality,* 191 Ariz. 40, 41, 951 P.2d 1232, 1233 (App.1997), *approved in relevant part,* 194 Ariz. 22, 976 P.2d 872 (1999). This case involves three related lawsuits, the first two filed in Maricopa County Superior Court and the third, this action, filed in Pinal County Superior Court. First, in August 1995, Manterola filed a personal injury action against her treating psychologist, Dr. Dennis Charles Elias, and his wife (collectively, the Eliases), alleging in various counts that Elias had instigated inappropriate sexual relations with her when she had been his patient and that his wife had failed to take any action despite knowing or having reason to know of the impropriety (the PI action).

¶ 4 During the relevant time frame, the Eliases were insured under several policies issued by Farmers. Farmers defended the Eliases in the PI action, but only pursuant to a reservation of rights. In January 1996, Manterola and the Eliases entered into a *Morris* agreement, whereby the Eliases stipulated to a judgment against them in the amount of $2,000,000 and assigned to Manterola all their rights under the policies, including any cause of action they may have had against Farmers for bad faith. Pursuant to that agreement, Manterola agreed that she would not execute on the judgment against the Eliases personally but would only proceed against Farmers. The Maricopa County Superior Court entered the stipulated judgment in the PI action on April 9, 1996. Because neither side appealed, that judgment became final thirty days later.

¶ 5 Second, after Manterola had filed her PI action against the Eliases, but before those parties had executed the *Morris* agreement and the stipulated judgment, Farmers filed a DRA in December 1995. In that

---

1. *United Servs. Auto. Ass'n v. Morris,* 154 Ariz. 113, 741 P.2d 246 (1987).

action, apparently brought against Manterola and the Eliases, Farmers sought a determination of its rights and obligations under the insurance policies.[2] Thereafter, Farmers moved for summary judgment in that action, contending the policies provided no coverage for Manterola's claims against the Eliases. A Maricopa County Superior Court judge granted Farmers' motion, but on appeal Division One of this court reversed, concluding that Farmers was obligated to provide coverage for Manterola's claims against Elias's wife. *Farmers Ins. Co. v. Manterola*, No. 1 CA–CV 97–0382 (memorandum decision filed March 10, 1998). Our supreme court ultimately denied review of that decision. Thereafter, in May 1999, a judgment adverse to Farmers apparently was filed in the DRA pursuant to the court of appeals' mandate.

¶ 6 Third, in September 1999, Manterola, as the Eliases' assignee, filed this bad faith action against Farmers, alleging in pertinent part:

> [Farmers] mistreated its insureds in bad faith for numerous reasons, including, but not limited to the following: Farmers did not have a reasonable basis for denying the claim and, indeed, disregarded express and bolded language in its own policy, disregarded over 30 years of Arizona precedent and disregarded [Elias's wife] altogether and demeaningly treated her as invisible; failed to conduct a reasonable investigation and failed to interview its insureds, failed to give equal consideration to its insureds, but rather exaggerated its own financial interest while virtually disregarding the financial interest of its insureds, improperly "investigating" the matter with an eye toward denying coverage and without consideration to the exposure of the insureds.

Farmers moved to dismiss the complaint, contending it was time-barred under A.R.S. § 12–542, the two-year statute of limitations.

2. The procedural background and details relating to Farmers' DRA are based solely on an uncontroverted chronology of events set forth in Manterola's opening brief and statements made by counsel at oral argument. The record does not contain Farmers' complaint, any other filings, or any court decisions in the DRA. It is undisputed, however, that Farmers had issued several policies to the Eliases, including a com-

¶ 7 In granting that motion, the trial court ruled that Manterola had "caused the [bad faith] action to accrue and the clock to tick" by "choosing to enter into the [*Morris* ] covenant after the [DRA] was filed by [Farmers] *and* entering a judgment." Thus, the trial court essentially concluded that Manterola's bad faith claim had accrued when the judgment in the PI action had become final in May 1996, the limitations period expired two years later in May 1998, and the DRA did not toll the limitations period. This appeal followed the trial court's denial of Manterola's motion for reconsideration.

## DISCUSSION

■ ¶ 8 "We will uphold a dismissal only if it is certain that the plaintiff cannot prove any set of facts that would entitle [her] to relief." *Southwestern Paint*, 191 Ariz. at 41, 951 P.2d at 1233. We review de novo "any questions of law relating to the statute of limitations defense," *Logerquist v. Danforth*, 188 Ariz. 16, 18, 932 P.2d 281, 283 (App.1996), mindful that the defense "is not favored." *Id.* at 22, 932 P.2d at 287. *See also CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C.*, 198 Ariz. 173, ¶ 5, 7 P.3d 979, ¶ 5 (App. 2000).

■ ¶ 9 As we recently stated:

> "In Arizona, insurance contracts include an implied covenant of 'good faith and fair dealing,' whereby each party is 'bound to refrain from any action which would impair the benefits which the other had the right to expect from the contract or the contractual relationship.'" *Voland v. Farmers Ins. Co.*, 189 Ariz. 448, 451, 943 P.2d 808, 811 (App.1997), *quoting Rawlings v. Apodaca*, 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986). "The core of the duty of good faith and fair dealing is that the insurer act reasonably towards its insured," *Deese v.*

mercial general liability policy, a homeowners' policy, and a personal umbrella policy. It is also undisputed that Division One of this court ultimately found coverage only for the claims against Elias's wife and only under the personal umbrella policy. *Farmers Ins. Co. v. Manterola*, No. 1 CA–CV 97–0382 (memorandum decision filed March 10, 1998).

*State Farm Mutual Automobile Insurance Co.*, 172 Ariz. 504, 508, 838 P.2d 1265, 1269 (1992), " 'giving equal consideration in all matters to the insured's interest." ' *Id.* at 507, 838 P.2d at 1268, *quoting Tank v. State Farm Fire & Cas. Co.*, 105 Wash.2d 381, 715 P.2d 1133, 1136 (1986).

... "[B]ad faith tort actions are based in the underlying contract." *Lloyd v. State Farm Mut. Auto. Ins. Co.*, 189 Ariz. 369, 377 n. 4, 943 P.2d 729, 737 n. 4 (App. 1996).... An insurer, however, "can be held liable for bad faith even when it does not violate any express provision of the insurance contract." *Lloyd*, 189 Ariz. at 377, 943 P.2d at 737....

*Rowland v. Great States Ins. Co.*, 199 Ariz. 577, ¶¶ 8–9, 20 P.3d 1158, ¶¶ 8–9 (App.2001). *See also Rawlings*, 151 Ariz. at 160, 726 P.2d at 576 (Bad faith arises from "an intentional act by which the insurer fails to provide the insured with the security and protection from calamity which is the object of the relationship.").

 ¶ 10 It is undisputed that § 12–542, which requires that certain actions be "commenced and prosecuted within two years after the cause of action accrues, and not afterward," applies to third-party bad faith claims. *Taylor*, 185 Ariz. at 177, 913 P.2d at 1095. The limitations period under § 12–542 "begins to run upon accrual," *Doe v. Roe*, 191 Ariz. 313, ¶ 40, 955 P.2d 951, ¶ 40 (1998), which requires not only an alleged "wrong" but also injury. *Id.* at ¶ 32, 955 P.2d at ¶ 32. *See also Myers v. Wood*, 174 Ariz. 434, 435, 850 P.2d 672, 673 (App.1992). "In other words, 'the limitations period does not commence until [an] actionable [wrong] exists, that is, [a tort] that results in appreciable, non-speculative harm to the [plaintiff].' " *CDT*, 198 Ariz. 173, ¶ 7, 7 P.3d 979, ¶ 7,

*quoting Commercial Union Ins. Co. v. Lewis and Roca*, 183 Ariz. 250, 254, 902 P.2d 1354, 1358 (App.1995). In addition, under the common law "discovery rule," "a cause of action does not accrue until the plaintiff knows or with reasonable diligence should know the facts underlying the cause." *Doe*, 191 Ariz. 313, ¶ 29, 955 P.2d 951, ¶ 29. *See also Taylor*, 185 Ariz. at 177, 913 P.2d at 1095 (tort claim accrues when plaintiff has actual or constructive knowledge of "defendant's wrongful conduct").

¶ 11 In *Taylor*, our supreme court held that "a third-party bad faith failure-to-settle claim accrues at the time the underlying action [against the insured] becomes final and non-appealable." 185 Ariz. at 179, 913 P.2d at 1097. The trial court relied on that proposition in dismissing Manterola's complaint. As Manterola points out, however, *Taylor* did not involve a carrier's denial of coverage or a DRA.

 ¶ 12 According to Manterola, when a carrier files a DRA to contest coverage, as Farmers did here, a bad faith claim does not accrue until the DRA results in a final determination of coverage under the policy.[3] That is particularly so in this case, she argues, because her bad faith claim was "predicated on [Farmers'] ... denial of coverage to [Elias's wife]," and "the gravamen of Farmers' bad faith was [that] failure." Indeed, at oral argument Manterola asserted that the "gravamen" of her claim is Farmers' alleged misconduct in the course of the DRA, specifically its refusal to provide coverage for Elias's wife pursuant to the policy's severability clause which, Manterola argues, Farmers improperly disregarded and concealed from her and the trial court in that action. Thus, Manterola maintains, the two-year limitations period did not begin to run until May 1999,

---

3. Farmers clearly had the right to defend the Eliases under a reservation of rights and then file a separate DRA to litigate and resolve the coverage issues. *See Morris; Kepner v. Western Fire Ins. Co.*, 109 Ariz. 329, 509 P.2d 222 (1973). That course of action by Farmers, in and of itself, did not constitute bad faith. *Zurich Ins. Co. v. Killer Music, Inc.*, 998 F.2d 674, 680 (9th Cir. 1993); *International Surplus Lines Ins. Co. v. University of Wyoming Research Corp.*, 850 F.Supp. 1509, 1527 (D.Wyo.1994), *aff'd, International Surplus Lines Ins. Co. v. Wyoming Coal Refining Sys., Inc.*, 52 F.3d 901 (10th Cir.1995). *See also Rawlings*, 151 Ariz. at 155, 726 P.2d at 571 (implied covenant of good faith and fair dealing does not require carrier to "pay claims which are not covered, or take any other action inconsistent with the contract," nor does it entitle insured "to payment of claims that are excluded by the policy,[ ]or to protection in excess of that which is provided for in the contract,[ ]or to anything inconsistent with the limitations contained in the contract").

when the final judgment in the DRA issued pursuant to the court of appeals' mandate, and her filing of this bad faith action in September 1999 was well within the limitations period.

¶ 13 We first note that Manterola's complaint, filed several months after the DRA had fully run its course, neither referred to the DRA nor specifically alleged any misconduct by Farmers in that action. Moreover, the broad allegations of the complaint, *see* ¶ 6, were not limited to Farmers' denial of coverage.

¶ 14 The primary obstacle to Manterola's argument, however, is the January 1996 *Morris* agreement itself.[4] That agreement stated, inter alia:

- After having "received written notice of the claim, litigation and demand for coverage," Farmers notified the Eliases of its "refusal to provide coverage and/or reservation of rights for the actions of Dr. Elias and [its] refusal to settle, within policy limits," Manterola's PI action against the Eliases.

- "The Eliases believe that some or all of [Farmers'] liability insurance policies issued to them ... afford both defense and indemnity insurance coverage for the allegations made in the Complaint against [them]."

- "Having learned of [Farmers'] refusal to provide coverage and/or a defense, [its] failure to interview Dr. Elias or [his wife], and, therefore, [its] failure to conduct a reasonable and prudent investigation, the Eliases believe [Farmers] ha[s] failed to provide protection for which the Eliases paid premiums."

- "[Farmers'] notifications ... that [it is] neither providing coverage nor settling within policy limits evidence that [it is] unwilling to pay anything on [Manterola's] claims against the Eliases. The (A) rejection of coverage, (B) denial of liability, and (C) failure to treat the Eliases' interests on equal footing with [Farm-

ers'], illustrate [its] disregard for and disinterest in the Eliases' interests ...."

- Farmers has "not only failed to provide the protection to which the Eliases are entitled and left them exposed to personal judgment far in excess of their assets, but ha[s] additionally failed to settle within policy limits, resulting in the Eliases having to retain counsel at their own expense. [Farmers] ha[s] failed to treat [Manterola's] claim with any consideration for the Eliases' financial interests and ha[s] thus deprived them of the security purchased at the time of acquiring the referenced insurance coverage."

- "While the Eliases had the right to contest the allegations and the degree of harm suffered as a result of the Eliases' conduct, the Eliases are forced to enter this agreement because they have been abandoned by [Farmers]."

- "The parties to this Agreement believe that [Farmers'] refusal to provide coverage, failure to properly investigate the claim, refusal to settle within policy limits and honor [its] obligations under the policies constitute bad faith."

- Manterola "acknowledges that [Farmers] may challenge one or more provisions of this Agreement and/or seek to invalidate, either totally or partially, the enforcement of this Agreement against [it]. [Manterola] assumes the risk as acknowledged in the preceding sentence."

- Manterola "hereby agrees that, upon resolution of all claims against [Farmers], whether in declaratory relief action or otherwise, and whether said resolution be by settlement or judgment, either favorable or unfavorable, [Manterola] will execute a notice of satisfaction of judgment and satisfaction of judgment as to the Eliases."

¶ 15 In view of those statements, we find no merit in Manterola's contention that her cause of action for bad faith first accrued more than three years later, in May 1999,

4. Although Manterola's complaint in this action referred to the *Morris* agreement, the agreement itself was first introduced in the record as an attachment to Farmers' response to Manterola's motion for reconsideration, after the trial court had dismissed her complaint. Because the agreement is in the record and is undisputed, we consider its provisions as they affect the issues here.

upon a final determination of coverage in the DRA. To ignore the legal effect of the *Morris* agreement on the statute of limitations issue here would turn the discovery rule on its head. Manterola and the Eliases clearly knew or should have known of the facts underlying her bad faith claim, at the latest, when the stipulated judgment in the PI case became final in May 1996. Any contrary suggestion cannot be reconciled with the *Morris* agreement.

¶ 16 In addition, Manterola apparently overlooks her limited assignment rights in this action. In the *Morris* agreement, the Eliases assigned to Manterola "any right of action for bad faith which exists against [Farmers]." No mention was made of assigning claims as to any future misconduct by Farmers, in the DRA or otherwise. And, as the Eliases' assignee, Manterola had no different or better rights to bad faith claims against Farmers than the Eliases would have had. *See K.B. v. State Farm Fire & Cas. Ins. Co.*, 189 Ariz. 263, 267, 941 P.2d 1288, 1292 (App.1997). *See also Leal v. Allstate Ins. Co.*, 199 Ariz. 250, ¶ 21, 17 P.3d 95, ¶ 21 (App.2000) ("[A] third-party claimant, a stranger to the contract, cannot sue the insurer for tortious breach of the duty of good faith.").

¶ 17 The *Morris* agreement effectively released the Eliases from any liability to Manterola and insulated them from any further damage claimed by her or resulting from Farmers' alleged bad faith, whether relating to its denial of coverage or any other purported misconduct. Indeed, protection of the insureds and reduction or elimination of their financial exposure are the fundamental purposes of a *Morris* agreement. Any monetary loss or other harm the Eliases sustained from Farmers' acts or omissions, past or future, was fixed at the time the *Morris* agreement was executed and the stipulated judgment was entered against them. Thus, any alleged misconduct by Farmers in the DRA, assuming arguendo it could constitute bad faith, affected and damaged only Manterola, not the Eliases. By its very nature, a third-party bad faith claim does not give the third-party plaintiff claims that are independent from those of the insured. Rather, the third-party's rights or claims derive from and are entirely dependent on the rights and claims of the insured/assignor. *See K.B.*

¶ 18 Manterola's argument also conflicts with well-established Arizona law that recognizes a bad faith claim's independent standing, irrespective of coverage. As noted in ¶ 9, "[t]he covenant of good faith and fair dealing can be breached even if the policy does not provide coverage." *Lloyd*, 189 Ariz. at 377, 943 P.2d at 737. Thus, a carrier may be "found liable for bad faith despite the fact that, under the circumstances, the policy did not require it either to defend or indemnify" the insured. *Id. See also Taylor*, 185 Ariz. at 176, 913 P.2d at 1094 ("[I]nsurer may breach its duty of good faith without actually breaching express covenants in the contract."); *Deese*, 172 Ariz. at 509, 838 P.2d at 1270 (breach of express covenant not a necessary prerequisite to action for bad faith); *Rawlings*, 151 Ariz. at 163, 726 P.2d at 579 (covenant of good faith and fair dealing may be breached even when insurer fully performs express covenants of contract); *Rowland*, 199 Ariz. 577, ¶ 9, 20 P.3d 1158, ¶ 9; *Voland*, 189 Ariz. at 454 n. 4, 943 P.2d at 814 n. 4. In view of those principles, the *Morris* agreement, and the broad allegations of Manterola's complaint, the final outcome of the DRA did not control when Manterola's bad faith claim accrued.

¶ 19 In an effort to persuade us otherwise, Manterola points to the chronological sequence of relevant events in this matter. In May 1997, the Maricopa County Superior Court ruled in the DRA that none of Manterola's claims against the Eliases was covered under Farmers' policies. Until Division One overturned that ruling in March 1998, Manterola argues, she had no valid basis for claiming that Farmers had acted in bad faith by unreasonably denying coverage. She further argues that if the two-year limitations period expired in May 1998, as the trial court ruled, she would have had to file that claim even though it clearly would have lacked merit— or even been frivolous—during that ten-month period. According to Manterola, that scenario mandates a conclusion that her bad faith claim did not accrue until the DRA's

coverage determination became final in May 1999.

¶ 20 Although we agree with some aspects of Manterola's argument, we disagree with her ultimate conclusion. We agree that a bad faith claim based solely on a carrier's denial of coverage will fail on the merits if a final determination of noncoverage ultimately is made. *See The Frog, Switch & Mfg. Co., Inc. v. The Travelers Ins. Co.*, 193 F.3d 742, 751 n. 9 (3d Cir.1999) ("[T]he court's determination that there was no potential coverage means that the insurer had good cause to refuse to defend."); *Deese*, 172 Ariz. at 510, 838 P.2d at 1271 (Martone, J., concurring in the judgment) (when "the contract claim is an essential element of the tort claim[,] ... then breach of contract is a prerequisite to the bad faith tort claim"; "if the defendant has not breached its contract with the plaintiff, then it had a reasonable basis to deny the claim"); *Richardson v. Guardian Life Ins. Co.*, 161 Or.App. 615, 984 P.2d 917, 923 (1999) (finding "claim for bad faith denial of coverage ... foreclosed at the outset ... because there was no coverage"). Although the pertinent Arizona decisions clearly have rejected the notion that a contractual breach or even policy coverage is a necessary element of all bad faith claims, none of the cases suggests that a carrier may be held liable for bad faith denial of coverage in the face of a final judicial determination that there was no coverage.

¶ 21 We also agree that Manterola's ability to prove one element of her bad faith denial of coverage claim—unreasonableness—depended on the outcome of the DRA. That is to say, only after Farmers' DRA had been fully litigated and had resulted in a final determination of coverage could Manterola prove that Farmers' denial of coverage had been unreasonable, a necessary element of that particular claim. *See Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, ¶¶ 19–20, 995 P.2d 276, ¶¶ 19–20 (2000); *Deese*, 172 Ariz. at 507, 838 P.2d at 1268 ("[W]hether an insurer has acted in bad faith towards its insured depends on the reasonableness of its conduct."); *Ness v. Western Sec. Life Ins. Co.*, 174 Ariz. 497, 500, 851 P.2d 122, 125 (App.1992).

¶ 22 Manterola's argument ultimately fails, however, because the superior court's May 1997 ruling in the DRA was not final and did not prevent Manterola from pursuing her coverage claim on appeal, as she in fact successfully did. Nor did that ruling preclude any bad faith claims unrelated to coverage or necessarily render frivolous any bad faith claim that depended solely on the coverage determination. The latter claim, it is true, would have stood or fallen with the resolution of the coverage issue. Thus, if Manterola had filed such a claim before Division One's decision in March 1998, it presumably would have been subject to dismissal or summary judgment after the May 1997 ruling. But, as she did with the coverage issue, Manterola could have appealed any adverse ruling on the bad faith claim, either as part of the DRA or separately. And, a favorable appellate outcome on the coverage issue may have likewise resuscitated the bad faith claim.

¶ 23 In sum, resolution of the merits of a bad faith claim presents different issues than determination of the accrual of that claim for statute of limitations purposes. The presence or absence of a reasonable basis for a carrier's acts or omissions clearly has a direct bearing on the merits of whether a viable bad faith claim exists. But even if the final outcome of the DRA may have been "determinative on the question of whether [the Eliases] had a tenable bad faith claim to assign," as Manterola argues, that does not control when the cause of action accrues and when the limitations period begins to run. *Cf. Coscia v. McKenna & Cuneo*, 25 Cal.4th 1194, 108 Cal.Rptr.2d 471, 482, 25 P.3d 670, 679 (2001) (Although exoneration by postconviction relief is prerequisite to recovery for legal malpractice arising out of criminal proceeding, "to avoid the statute of limitations bar, a criminal plaintiff might be required to initiate the malpractice suit prior to resolution of all postconviction proceedings."). If the rule were otherwise, it could be argued that any cause of action, regardless of its basis, does not accrue for statute of limitations purposes unless and until all elements of the claim are provable or some

determination of fault or liability has been made.

¶ 24 As Manterola points out, the context here is different from that presented in *Taylor*. Nonetheless, application of *Taylor*'s "final judgment accrual rule" to this case is both logical and reasonable, such that the statute of limitations commenced when the underlying PI action against the Eliases became "final and non-appealable." 185 Ariz. at 179, 913 P.2d at 1097. *See Sandbulte v. Farm Bureau Mut. Ins. Co.*, 343 N.W.2d 457, 462 (Iowa 1984) (insured's bad faith action against insurer accrued "as of the date of settlement [of] and judgment" in underlying personal injury action, not later on final disposition of insurer's DRA). The Eliases had appreciable, nonspeculative damages once their "underlying liability" was "finally determined," *Taylor*, 185 Ariz. at 178, 913 P.2d at 1096, regardless of whether coverage had been conclusively determined. At the latest, any damage to the Eliases proximately caused by Farmers' alleged bad faith was final and irremediable when the stipulated judgment in Manterola's PI action became final in 1996. *See CDT; Commercial Union.* Because Manterola only stood in the Eliases' shoes as their assignee, her bad faith claim accrued then, not in May 1999, when the DRA was completed.

¶ 25 The two cases on which Manterola primarily relies do not compel a different result. In *Brown v. Superior Court*, 137 Ariz. 327, 330 n. 1, 670 P.2d 725, 728 n. 1 (1983), our supreme court stated in dictum that, should plaintiff's coverage claim "terminate adversely to [him], one would assume that the bad-faith claim must fall," and that "[o]ne could plausibly argue . . . that a bad-faith claim can be pursued only after disposition of the underlying policy claim." But, the court specifically declined to "address the issue." *Id.* And in *Nationwide Mutual Insurance Co. v. Stevens*, 166 Ariz. 372, 375, 802 P.2d 1071, 1074 (App.1990), *overruled in*

*part by Deese*, this court rejected the insured's argument in a first-party bad faith action that "he ha[d] suffered damages due to [the carrier's] alleged bad faith processing of [his] uninsured motorist claim and that these damages are independent of the ultimate coverage determination." We stated that "[t]he basis for a bad faith action must be a valid claim." *Id.* To the extent those cases suggest that coverage under a policy is a critical prerequisite to all bad faith claims, *Deese* and its progeny effectively have undermined that proposition. *See Deese*, 172 Ariz. at 509, 838 P.2d at 1270 (concluding that footnote one in *Brown* was dicta, "ha[d] no precedential value[,] and [was] not persuasive authority" for proposition that breach of an express covenant in policy is necessary element for bad faith claim; also overruling *Stevens*, in part, and implicitly rejecting its reasoning by vacating court of appeals' opinion in *Deese* that had relied on it).

¶ 26 In addition, neither *Brown* nor *Stevens* involved any statute of limitations issues. And, although *Brown* involved a first-party bad faith claim for loss of earnings, our supreme court did not discuss or even address that claim on the merits. In *Stevens*, this court merely held that a determination of the third party's (there, the alleged uninsured motorist) liability was a predicate for the carrier's obligation to pay any uninsured motorist benefits and that a bad faith claim could be asserted only if the uninsured motorist were found liable in the arbitration. The holding in *Stevens* essentially mirrors the "final judgment accrual rule" adopted in *Taylor*. 185 Ariz. at 179, 913 P.2d at 1097.

¶ 27 Manterola's other cited authorities neither address the narrow question of accrual raised here nor refute our conclusion that, based on the particular circumstances in this case, Manterola's bad faith claim accrued, for statute of limitations purposes, even though coverage still was uncertain.[5]

5. *See, e.g., Uyleman v. D.S. Rentco*, 194 Ariz. 300, ¶¶ 15, 24, 981 P.2d 1081, ¶¶ 15, 24 (App.1999) (reiterating conclusion in *Taylor* that finality of judgment against insured marks accrual of bad faith failure-to-settle claims); *Commercial Union*, 183 Ariz. at 254, 902 P.2d at 1358 (under discovery rule, cause of action accrues only when dam-

ages are actual, appreciable, "non-speculative," irremediable); *Ness*, 174 Ariz. at 500, 851 P.2d at 125 (first party bad faith claim not time-barred because genuine factual dispute existed as to when carrier denied or failed to pay claim); *Tullar v. Walter L. Henderson, P.C.*, 168 Ariz. 577, 816 P.2d 234 (App.1991) (cause of action for

Similarly, Manterola's references to a treatise on bad faith and the Restatement (Second) of Torts (Restatement) are unhelpful and unpersuasive. *See* Stephan A. Ashley, *Bad Faith Actions: Liability and Damages,* §§ 7:05, 7:06, 7:11, 7:13, 7:14, 7:15 (1996) (not discussing effect of either a DRA challenging coverage or a *Morris* agreement on limitations period, and referring only to *Brown* and *Stevens* in discussion of Arizona law upon which Manterola relies); Restatement § 899, cmt. c(1979) (merely discussing statute of limitations issues in tort cases generally, without referring to bad faith claims). Indeed, the treatise expressly states that "[m]ost courts have held in third party cases that the insured's cause of action accrues and the limitations period begins to run when the third party's judgment against the insured becomes final." Ashley, *supra,* § 7:06, at 7–14 to 7–15.

¶ 28 In support of our conclusion, we also note the fairly common practice of insureds or their assignees, when named as defendants in DRA's filed by carriers to contest coverage, filing counterclaims that allege bad faith. *See, e.g., Philadelphia Indem. Ins. Co. v. Barerra,* 200 Ariz. 9, ¶ 6, 21 P.3d 395, ¶ 6 (2001); *Farmers Ins. Co. v. Young,* 195 Ariz. 22, ¶ 4, 985 P.2d 507, ¶ 4 (App.1998). Presumably that procedure would not be followed or condoned if, as Manterola argues, one could not maintain a "premature" bad faith claim based on denial of coverage unless and until the DRA resulted in a final determination of coverage. Rather, parties and trial courts in situations such as this apparently prefer to litigate all related issues in a single proceeding.

¶ 29 Not only does Arizona law not preclude that practice, but also it arguably is the most cost effective and promotes judicial economy. *See Deese,* 172 Ariz. at 509, 838 P.2d at 1270 (holding that "a plaintiff may simultaneously bring an action both for breach of contract and for bad faith"). And, if the bad faith claim (whether pursued in a separate action or as a counterclaim in a carrier's DRA) hinges solely on the outcome of a coverage issue in a DRA, the parties may stipulate to, or the court on proper motion may order, a stay of the bad faith claim, pending final resolution of the coverage issue. *Cf. Coscia,* 108 Cal.Rptr.2d at 483, 25 P.3d at 680 (Although legal malpractice action arising from criminal proceedings "is subject to demurrer or summary judgment while a plaintiff's conviction remains intact, the court should stay the malpractice action during the period in which such a plaintiff timely and diligently pursues post-conviction remedies."). Regardless of the circumstances, however, the filing and litigation of a DRA do not delay or directly affect the accrual of a bad faith claim in cases such as this.

¶ 30 Manterola next asserts, as she first did in her motion for reconsideration below, that, even if her bad faith claim accrued when the PI judgment became final, "[e]quitable estoppel precludes Farmers from asserting the statute of limitations as a means of avoidance." According to her, Farmers' misconduct in allegedly concealing the policy's severability clause when it moved for summary judgment in the DRA created a fact question precluding summary dismissal of her complaint. We disagree. As we have discussed, the DRA did not toll, suspend, or otherwise affect the statute of limitations on Manterola's bad faith claim, at least after the Eliases had executed the *Morris* agreement. Thus, even assuming arguendo Farmers concealed information in the DRA, that caused no harm to the Eliases and had no effect, equitable or otherwise, on when Manterola's bad faith claim accrued.

¶ 31 Finally, we reject Manterola's related assertion, also raised in her motion for reconsideration below, that other policy considerations underlying the statute of limitations militate against dismissal of her complaint. She urges that those concerns "are not served by their application to wrongly delayed claims of survivors of sexual molestation/assignees of negligent insureds' bad faith claims"; she "should not be punished for a

professional negligence does not accrue until damages are irrevocable); *Amfac Distrib. Corp. v. Miller,* 138 Ariz. 155, 673 P.2d 795 (App.1983), *approved as supplemented,* 138 Ariz. 152, 673 P.2d 792 (1983) (statute of limitations for attorney malpractice claim did not commence until harm caused by attorney's negligence had been finally judicially determined).

lack of 'diligence' when she was actively litigating coverage" in the DRA; and Farmers should not be rewarded for its "disingenuous litigation antics" in the DRA.

¶ 32 But, again, Farmers' filing and pursuit of the DRA does not justify or explain Manterola's failure to assert her bad faith claim until over two years after the underlying judgment in her PI action had become final. She does not cite, nor have we found, any authority excusing an untimely filing based on the plaintiff's involvement in a related action with the same defendant. Indeed, Manterola could have and, as Farmers posits, arguably should have asserted her bad faith claim as a counterclaim in the DRA, thereby avoiding dismissal here on statute of limitations grounds. Ariz. R. Civ. P. 13(a), 16 A.R.S., Pt. 1. *See also Barerra; Young.*[6] In any event, we conclude that the policy concerns underlying adherence to the limitations period—to protect defendants and courts from the burden of stale claims and to provide some assurance of security and finality—weigh in favor of finding Manterola's claim time barred. *See Ritchie v. Grand Canyon Scenic Rides,* 165 Ariz. 460, 464, 799 P.2d 801, 805 (1990).

¶ 33 In sum, neither Manterola's proffered equitable considerations nor Farmers' filing of its DRA tolled the limitations period on Manterola's bad faith claim. At the latest, that claim accrued in May 1996, thirty days after the entry of final judgment in her PI action against the Eliases, with no appeal therefrom having been filed. Because Manterola filed her bad faith action more than two years after that date, the trial court properly dismissed the complaint.

## DISPOSITION

¶ 34 The trial court's order dismissing Manterola's complaint based on the statute of limitations is affirmed. Because Manterola

is not the prevailing party on appeal, her request for attorney's fees on appeal, pursuant to A.R.S. § 12–341.01, is denied. *Beckler v. State Farm Mut. Auto. Ins. Co.,* 195 Ariz. 282, ¶ 38, 987 P.2d 768, ¶ 38 (App.1999).

CONCURRING: BRAMMER, JR., P.J. and FLÓREZ, J.

---

6. Because we affirm the trial court's ruling on the statute of limitations ground, we do not address the merits of Farmers' contention that Manterola was required to assert her bad faith claim as a compulsory counterclaim in the DRA. *See* Ariz. R. Civ. P. 13(a). *See also Adams v. Bear,* 87 Ariz. 288, 293, 350 P.2d 751, 754 (1960) ("[A] claim which is a compulsory counterclaim under Rule 13(a) ... is waived and thereafter is

barred if not pleaded as a counterclaim."); *Ex Parte Canal Ins. Co.,* 534 So.2d 582 (Ala.1988) (insured's claim based on bad faith refusal to pay valid claim was compulsory counterclaim to insurer's action seeking determination of its obligations under policy); *Miller v. State and County Mut. Fire Ins. Co.,* 1 S.W.3d 709 (Tex.Ct.App. 1999) (to same effect).