Bryan BARTEN, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

No. CV–12–00399–TUC–CKJ (LAB).

United States District Court,
D. Arizona.

Filed July 1, 2014.

Paul Zebrowski, Thomas A. Biscup, Law Offices of Paul Zebrowski & Associates, Shelby Township, MI, James Louis Spagnuolo, Jr., Bone Bourbeau Lizza & Spagnuolo PLLC, St. Clair Shores, MI, Richard H. Friedman, Friedman Rubin, Bremerton, WA, for Plaintiff.

Bennett Evan Cooper, Floyd P. Bienstock, Kevin Roger Fincel, Shannon E. Trebbe, Erin Elizabeth Bradham, Steptoe & Johnson LLP, Phoenix, AZ, for Defendant.

## ORDER

CINDY K. JORGENSON, District Judge.

On March 21, 2014, Magistrate Judge Leslie A. Bowman issued a Report and Recommendation, (Doc. 348), which addressed defendant's three motions for partial summary judgment. (Docs. 108, 186, and 188). Magistrate Judge Bowman advised the parties that written objections to the Report and Recommendation were to be filed within fourteen days after service of a copy of the Report and Recommendation pursuant to 28 U.S.C. § 636(b). Defendant has filed an objection. (Doc. 350). Plaintiffs have filed a response. (Doc. 353). On May 7, 2014, Defendant's filed a Motion for Leave to File a Reply. (Doc. 354). Plaintiff filed an Opposition to Defendant's Motion on May 13, 2014, (Doc. 356), and Defendant filed a Reply in Support of their Motion to File a Reply to Defendant's Objections on May 23, 2014. (Doc. 357).

## I. Motion for Leave to File a Reply

Rule 72 of the Federal Rules of Civil Procedure permits a party to file objections to a Magistrate Judge's Report and Recommendation and permits a party to respond to another party's objections. Fed.R.Civ.P. 72(b)(2). However, the rule does not permit the filing of replies. Moreover, in Magistrate Judge Bowman's Report and Recommendation, she specifically explained that the rules do not permit the filing of a reply to a response to a party's objections. (Doc. 348 at p. 1006).

Further, the Court does not find that a reply to the response is necessary in this matter. There has been extensive briefing and argument related to the issues presented to this Court. The parties have filed three separate summary judgment motions all with corresponding responses and replies, conducted oral argument before Magistrate Judge Bowman and had an opportunity to file objections and a response to the objections to Magistrate Judge Bowman's Report and Recommendation. A review of Plaintiff's proposed reply reveals that it does not add anything significant to the briefing in this matter. As such, Defendant's Motion to File a Reply is denied. *See Hess v. Ryan*, 651 F.Supp.2d 1004, 1009, n. 1 (D.Ariz.2009).

## II. Standard of Review

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Pursuant to 28 U.S.C. § 636(b)(1), if a party makes a timely objection to a magistrate judge's recommendation, then this Court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." *See also Schmidt v. Johnstone*, 263 F.Supp.2d 1219, 1226 (D.Ariz.2003) (reading the Ninth Circuit's decision in *Reyna–Tapia* as adopting the view that district courts are not required to review "any issue that is not the subject of an objection"); *United States v. Reyna–Tapia*, 328 F.3d 1114 (9th Cir.2003) (disregarding the standard of review employed by the dis-

trict court when reviewing a report and recommendation to which no objections were made).

### III. Background

The parties do not object to the factual background as set forth in the Report and Recommendation. As such, the Court adopts the Report and Recommendation's background information.

### IV. Defendant's Motion for Partial Summary Judgment Re: Contract and Bad Faith Claims. (Doc. 108).

Defendant's Motion addresses several subjects. Defendant argues that Michigan law applies to Plaintiff's breach of contract and bad faith claims. Applying Michigan law, Plaintiff's claims for benefits are subject to Michigan's statutory one year back rule, which limits contract and tort claims for personal injury protection ("PIP") benefits from one year prior to the date on which the action is commenced. MCL § 500.3145(1).

██ Further, Michigan law does not recognize the tort of bad faith and as such, Plaintiff's claims for bad faith are barred. *See Roberts v. Auto–Owners Ins. Co.,* 422 Mich. 594, 604, 374 N.W.2d 905, 909 (Mich. 1985) (citation omitted). *Compare Zilisch v. State Farm Mutual Auto. Ins. Co.,* 196 Ariz. 234, 237, 995 P.2d 276, 279 (Ariz. 2000); *Rawlings v. Apodaca,* 151 Ariz. 149, 160, 726 P.2d 565, 576 (1986) (Arizona law does allow a bad faith tort action). In the alternative, Defendant argues that even if the Court were to apply Arizona law to Plaintiff's bad faith claim, any claims that occurred before April 13, 2010 are barred by Arizona's two-year statute of limitations.

*Choice of Law—Plaintiff's Breach of Contract Claim*

Magistrate Judge Bowman found that Plaintiff's breach of contract claim should be decided pursuant to Michigan law. The parties have not raised any objections to this recommendation. As such, the Court adopts this recommendation.

*One Year Limitations—Plaintiff's Breach of Contract Claim*

Magistrate Judge Bowman found that Plaintiff's recovery for breach of contract damages is limited by Michigan's one year back rule. Plaintiff has not raised any objections to this recommendation. As such, the Court adopts this recommendation.

*Choice of Law—Plaintiff's Bad Faith Claim*

Magistrate Judge Bowman found that Plaintiff's bad faith claims are governed by Arizona law. Defendant timely filed an objection to this recommendation and suggests that Michigan law should apply to Plaintiff's bad faith claims.

██ Federal courts sitting in diversity must apply the forum state's choice of law rules. *Love v. Associated Newspapers, Ltd.,* 611 F.3d 601, 610 (9th Cir.2010). "Arizona courts apply the principles of the Restatement (Second) of Conflict of Laws (1971) ("Restatement") to determine the controlling law for multistate torts." *Bates v. Superior Court of State of Ariz. In and For the County of Maricopa,* 156 Ariz. 46, 48, 749 P.2d 1367, 1369 (Ariz. 1988); *Pounders v. Enserch E & C, Inc.,* 232 Ariz. 352, 354, 306 P.3d 9, 11 (Ariz. 2013).

██ "Restatement § 6(2) lists the general factors relevant to choosing the applicable rule of law and § 145 gives further guidance for the application of the § 6 factors to tort issues." *Bates,* 156 Ariz. at 48–49, 749 P.2d at 1369–70. Pursuant to § 145, in resolving multistate tort issues, the courts must apply the law of the state

which "has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) Conflict of Laws § 145(1); *Bates,* 156 Ariz. at 48–49, 749 P.2d at 1369–70.

In order to perform this analysis in accordance with Arizona law, this Court first considers the general tort choice of law principles of Restatement § 145 as well as the specific personal injury principles of Restatement § 146. *See Bates,* 156 Ariz. at 49, 749 P.2d at 1370 (finding that pursuant to Arizona law, a bad faith refusal to provide benefits to an insured can create sufficient mental distress to qualify as a personal injury). Then, the Court applies the guidelines of both of those sections to the general principles listed in Restatement § 6(2). *Lange v. Penn Mut. Life Ins. Co.,* 843 F.2d 1175, 1178–1179 (9th Cir.1988) (citing *Bates,* 156 Ariz. at 48–50, 749 P.2d at 1369–71).

Restatement § 145 provides:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contracts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated accordance to their relative importance with respect to the particular issue.

Applying the first § 145 factor, Magistrate Judge Bowman concluded that the injury occurred in Arizona because Arizona is where Plaintiff experienced mental and physical harm as a result of Defendant's alleged bad faith in providing misleading information regarding the extent of his benefits. (Doc. 348, p. 997). Defendant argues that some of Plaintiff's alleged injuries occurred in Michigan.

■ The "place of injury" is where "the last event necessary for liability occurred (that is, the place where the injury manifested)." *Pounders,* 232 Ariz. at 356, 306 P.3d at 13. The last event necessary for liability can only occur in one location, which "preserves the Restatement goals of certainty, predictability, and uniformity of result." *Id.*

On April 21, 1995, Plaintiff lived in Hart, Michigan when he was involved in a single vehicle accident in Lansing Michigan. (Doc. 169–1 at p. 1). At the time of his injury, Plaintiff was insured under his father's insurance policy issued by Defendant in Michigan. *Id.* at 2. After the accident, on April 28, 1995, Plaintiff was represented by attorney George T. Sinas who applied for PIP benefits on Plaintiff's behalf. *Id.* at 4. Plaintiff began receiving various PIP benefits from Defendant in 1995 and all claims were handled by personnel in Michigan. *Id.* at 5.

Plaintiff moved to Tucson, Arizona in December 1996. *Id.* at 7. After moving to Tucson, Plaintiff was initially assisted by his girlfriend. *Id.* at 19–20. Defendant paid her for her services including shopping and transferring Plaintiff to and from his wheelchair. *Id.* at 20. Plaintiff's girlfriend moved in 1997 and Plaintiff subsequently experienced significant problems handling daily personal activities. *Id.* at

19–20. Plaintiff contacted Defendant and advised them that he needed help with "everything." *Id.* at 21. He gave examples of shopping and cleaning and was advised that these services were not covered. *Id.* As a result, Plaintiff believed that all services other than medical bills were no longer covered. *Id.* In the fall of 2011, Plaintiff met Andy Zimmer in Las Vegas. *Id.* at 18. Mr. Zimmer was receiving PIP benefits from a Michigan no fault insurance policy and he advised Plaintiff on the actual extent of his coverage. *Id.*

While Plaintiff may allege that Defendant failed to provide him with his full panoply of benefits originating from his time in Michigan, he did not begin to suffer mental and physical distress as a result of Defendant's alleged bad faith in the handling of his claim until after his girlfriend moved and Defendant allegedly provided him with misleading information regarding his benefits. These acts occurred while Plaintiff was living in Arizona. Accordingly, the place of injury in this case is Arizona.

In analyzing the second § 145 factor, Magistrate Judge Bowman concluded that the conduct causing the injury occurred in Michigan where Plaintiff's claims were handled. (Doc. 348, p. 997). The Court agrees. Defendant allegedly injured Plaintiff through its bad faith practices and since Plaintiff's claims were handled in Michigan, that is where the bad faith conduct causing Plaintiff's injuries, allegedly occurred.

Analyzing the third § 145 factor, Magistrate Judge Bowman explained that Defendant is incorporated in Illinois and has its principal place of business in Illinois, while Plaintiff is domiciled in Arizona. Magistrate Judge Bowman gave more weight to Plaintiff's domicile. Defendant argues that Magistrate Judge Bowman failed to consider that Defendant does significant business in Michigan, the insurance policy was issued out of Defendant's Michigan office, and Plaintiff resided in Michigan when he suffered the underlying injuries from the vehicular accident. Defendant suggests that this factor is a split between Michigan and Arizona.

While there are geographic contacts between Michigan and Arizona amongst the parties, Arizona applies "greater weight to the residence of the alleged tort victim" in cases where the injury is to plaintiff's personal interests. *Bates,* 156 Ariz. at 50, 749 P.2d at 1371. While Plaintiff's residence was Michigan at the time some of Defendant's alleged bad faith conduct occurred, the Court has already determined that Plaintiff was domiciled in Arizona when he felt the impact of Defendant's alleged conduct. As a result, the Court will ascribe greater weight to Plaintiff's Arizona contacts.

Analyzing the fourth § 145 factor, Magistrate Judge Bowman found that the relationship between the parties is centered between Illinois and Arizona. (Doc. 348, p. 997). Defendant argues that all of Plaintiff's claims were handled in Michigan by Michigan PIP claim representatives and Defendant's claims representatives communicated with Plaintiff from Michigan.

As stated by the Arizona Supreme Court, in an insurance bad faith case, "the relationship would seem to be centered at the insurer's home office." *Bates,* 156 Ariz. at 50, 749 P.2d at 1371. It is undisputed that many of Defendant's 69 employees who were involved in Plaintiff's claim handled his claim physically out of Michigan. *See* (Doc. 169–1 at pp 5–7). The claim was initially processed in Michigan based on an automobile insurance policy issued in Michigan to Plaintiff's father, a Michigan resident, as a result of an automobile accident that occurred in Michigan.

*See* (Doc. 169–1 at pp. 1–3, 5–7). As such, this Court finds that the parties' relationship is primarily centered in Michigan.

A review of this Court's analysis reveals that the factors are quantitatively evenly split between Michigan and Arizona. However, the Court's analysis on "which state has the most significant contacts is qualitative, not quantitative." *Lange*, 843 F.2d at 1180 (citing *Bates*, 156 Ariz. at 49, 749 P.2d at 1370). In performing this analysis, the Court must consider Restatement § 146. *Lange*, 843 F.2d at 1180; *Bates*, 156 Ariz. at 49, 749 P.2d at 1370.

Restatement § 146 states:

In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

In this case, the injury occurred in Arizona. Accordingly, unless another state has a more significant relationship under the principles stated in Restatement § 6 to the occurrence and the parties, Arizona law shall apply. Pursuant to Restatement § 6:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and,

(g) ease in the determination and application of the law to be applied.

Defendant argues that several of these factors support applying Michigan law, specifically factors (c), (d), (e), and (f). The Court finds that factor (a), "the needs of the interstate and international systems," has minimal relevance to this bad faith action. *See Bates*, 156 Ariz. at 50, 749 P.2d at 1371; *Lange*, 843 F.2d at 1180. Further, Plaintiff's bad faith action is based in tort not contract, as such, factor (d), "the protection of justified expectations," is not a relevant factor to consider. *See Lange*, 843 F.2d at 1180–1181 (finding that plaintiff's claim alleging a breach of the implied covenant of good faith arises in tort and "in such a case, subsection (d) of Restatement § 6(2) is not applicable") (citing *Bates*, 156 Ariz. at 50, 749 P.2d at 1371); *see also* Restatement § 145, comment (b) ("the protection of justified expectations of the parties, which is of extreme importance in such fields as contracts, property, wills and trusts, is of lesser importance in the field of torts.").

Next, this Court finds that factor (e), "the basic policies underlying the particular field of law," is similarly neutral. *See* Restatement § 6, comment (h) ("this factor [basic policies underlying particular field of law] is of particular importance in situations where the policies of the interested states are largely the same but where there are nevertheless minor differences between their relevant local law rules."). Additionally, factor (f), is of "lesser importance in torts." Restatement § 145, comment (b); *see also Lange*, 843 F.2d at 1180

(applying § 6 factors to an insurance bad faith claim the Court determined that a consideration of the principle of certainty, predictability and uniformity of result is not helpful); *Bates,* 156 Ariz. at 50, 749 P.2d at 1371 (finding that the factor considering certainty, predictability and uniformity of result is neutral in the insurance bad faith context), and factor (g) is insignificant to this analysis as this Court could easily apply either Arizona law or Michigan law to this claim. *See Garcia v. General Motors Corp.,* 195 Ariz. 510, 519, 990 P.2d 1069, 1078 (Ariz.Ct.App.1999); *see also Bates,* 156 Ariz. at 50, 749 P.2d at 1371.

The Court finds that factors (b) and (c) are applicable to this case and carry greater weight than the other factors. *Pounders,* 232 Ariz. at 359, 306 P.3d at 16; *see also* Restatement § 145, comment (b) (identifying the policies of the forum and interested states as factors of relatively greater importance in tort cases). The Court evaluates the relevant policies of the forum state and other interested states "in light of § 145's contacts, considering particularly the policy of the dominant state." *Pounders,* 232 Ariz. at 359, 306 P.3d at 16.

The relevant policies of Arizona and Michigan are completely different in this case. Arizona permits recovery for insurance bad faith claims. *See Zilisch,* 196 Ariz. at 237, 995 P.2d at 279. Michigan does not recognize a separate cause of action for insurance bad faith. *Roberts,* 422 Mich. at 604, 374 N.W.2d at 909 (citations omitted). As the forum state, Arizona has an interest in making sure· that its residents are made whole for injuries caused while in Arizona. However, Defendant correctly points out that Michigan provides a comprehensive law governing no fault claims that permits among other things lifetime attendant care benefits. While Michigan may have an interest in

precluding the use of insurance bad faith litigation in light of its expansive No Fault Act, the Court finds that this interest does not create a greater interest in applying Michigan law to Plaintiff's bad faith claim in this case.

■ After applying the principles of Restatement §§ 145, 146, and 6, this Court agrees with the Magistrate Judge and concludes that Arizona law shall apply to Plaintiff's insurance bad faith claim as it has the most significant relationship to the parties.

Defendant further argues that Michigan law should apply even though Plaintiff subsequently moved to Arizona and his resulting injuries were suffered in Arizona. *See Pounders,* 232 Ariz. at 358, 306 P.3d at 15. In *Pounders,* the plaintiff was exposed to asbestos in New Mexico but was diagnosed with mesothelioma in Arizona years later. *Id.* The court ascribed minimal significance to the place of injury in its choice of law analysis holding that the plaintiff's move to Arizona was fortuitous and as a result it applied significant weight to the location where the conduct causing the injury occurred. *Id.* Defendant suggests that the facts in this case are analogous to *Pounders* and as such, the Court should perform a similar analysis. *See Id.* This Court disagrees.

While, there may be situations where the place of injury does not play an important role in determining the state law to apply such as when the place of injury is fortuitous or when it bears little relation to the occurrence and the parties with respect to the particular issue; Restatement (Second) Conflict of Laws § 145 comment (e), generally, in cases involving personal injuries, the place where the injury occurred plays an "important role in the selection of the state of the applicable law." *Id.*

In this case, there was an ongoing and continuing relationship between Plaintiff and Defendant from the time of the Plaintiff's underlying accident in Michigan and continuing after he moved to Arizona. However, most of the alleged acts of bad faith occurred while Plaintiff resided in Arizona. Further, the plaintiff in *Pounders* did not have a continuing relationship with the defendant and there was no relationship between defendant's actions and the place of injury. As such, the Court finds this case distinguishable from the unique situation in *Pounders* and applies the general rule that the place of injury plays a more significant role in the Court's analysis. *See* Restatement (Second) Conflict of Laws § 146, comment (c).

Defendant argues that applying Arizona law to Plaintiff's insurance bad faith claim would create a new duty under Michigan's no fault insurance policy that does not exist under Michigan law, such as a duty to advise the insured on his insurance benefits. However, Defendant is a national insurer and would have known that its Michigan insureds may relocate. As a result, Defendant is aware that it may have to perform its obligations as an insurer in any state. Defendant "could not justifiably expect that every aspect of its conduct would be governed by the law of the state in which the contract originally was made." *Bates*, 156 Ariz. at 51, 749 P.2d at 1372. Moreover, as noted earlier, the Court is applying Arizona law only to Plaintiff's claim in tort; Plaintiff's claim for breach of contract remains subject to Michigan law.

*Statute of Limitations—Bad Faith Claim*

Magistrate Judge Bowman recommended applying Arizona's two year statute of limitations to Plaintiff's bad faith claim. Neither party objects to this recommendation and it is adopted.

Magistrate Judge Bowman further recommended that this Court refer a determination on whether the discovery rule is applicable to Plaintiff's bad faith claim to the trier of fact because a reasonable jury could find that Plaintiff was not aware of the extent of his benefits prior to the deadline for the statute of limitations. Defendant objects to this recommendation.

■ Pursuant to Arizona law:
[I]nsurance contracts include an implied covenant of good faith and fair dealing, whereby each party is 'bound to refrain from any action which would impair the benefits which the other had the right to expect from the contract or the contractual relationship.' *Voland v. Farmers Ins. Co.*, 189 Ariz. 448, 451, 943 P.2d 808, 811 (App.1997), quoting *Rawlings v. Apodaca*, 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986).

*Rowland v. Great States Ins. Co.*, 199 Ariz. 577, 582, 20 P.3d 1158, 1163 (Ariz.Ct. App.2001) (internal quotations omitted). This implied covenant is breached when an insurer's conduct damages the security which the insured sought to gain by buying insurance. *Deese*, 172 Ariz. at 508, 838 P.2d at 1269 (citations omitted).

■ Arizona's two year limitation period for bad faith claims "begins to run upon accrual." *Manterola v. Farmers Ins. Exchange*, 200 Ariz. 572, 576, 30 P.3d 639, 643 (Ariz.Ct.App.2001) (citing *Doe v. Roe*, 191 Ariz. 313, 326, 955 P.2d 951, 964 (Ariz. 1998)). "Under the common law discovery rule, a cause of action does not accrue until the plaintiff knows or with reasonable diligence should know" the defendant's wrongful conduct. *Id.* (internal quotations and citations omitted).

■ Defendant argues that Plaintiff submitted requests for reimbursement to Defendant for attendant care services such as bathing, toileting, dressing and undress-

ing before the April 13, 2010 limitations date. As such, Plaintiff knew he was entitled to services above and beyond his medical needs prior to April 13, 2010 and any claims relating to conduct that occurred prior to that date are time barred.

While this appears to be compelling evidence that Plaintiff at a minimum had reason to know that he was entitled to attendant care benefits beyond his medical needs prior to the April 13, 2010 limitations date, Plaintiff has submitted evidence that he was not aware of the actual extent of his benefits until after his conversation with Andy Zimmer in the fall of 2011.

In the context of a motion for summary judgment, the Court must draw all inferences in the light most favorable to the nonmoving party. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). Further, the Court may not make credibility determinations or weigh conflicting evidence. *Id.* Applying these rules, the Court determines that a genuine issue of fact exists as to whether Plaintiff knew or reasonably should have known about Defendant's alleged bad faith actions relating to his attendant care prior to April 13, 2010.

Next, Defendant argues that prior to 2010, Plaintiff was represented by attorney George Sinas in relation to his claim for benefits. As such, Plaintiff actually or constructively knew through Mr. Sinas about the availability of attendant care benefits prior to April 13, 2010. Plaintiff responds that there are factual disputes regarding the nature, extent and relevance of Plaintiff's representation by Mr. Sinas.

There is significant evidence in this case to demonstrate that Plaintiff had an ongoing attorney client relationship with Mr. Sinas during intermittent periods from 1995 through 2006. On April 28, 1995, Mr. Sinas drafted a letter advising Defendant that he had been retained by Plaintiff. (Doc. 108–2, p. 43). Then, on May 21, 1996, Mr. Sinas sent another letter to Defendant in relation to his representation of Plaintiff for replacement services. (Doc. 169–10). Further, it is undisputed that Mr. Sinas represented Plaintiff for a period of 12 months after the underlying accident for first party benefits. (Doc. 169–1 at p. 4).

Additionally, there is some evidence that Mr. Sinas represented Plaintiff between 2004 and 2008. During that time period, Plaintiff sent numerous letters to Defendant in which he copied Mr. Sinas. *See* (Doc. 108–2, pp. 92, 93, 95, and 96). Further, in a February 11, 2006 letter to Defendant, Plaintiff explicitly stated that he was requesting certain services "upon the advice of [his] attorney George T. Sinas." (Doc. 108–2 at p. 95). Finally, there were communications between Plaintiff and Mr. Sinas relating to Plaintiff's claim from 2004 through 2008, in which Plaintiff sought legal advice. (Doc. 310–1 at p. 4).

However, Plaintiff contends that Mr. Sinas did not represent him after 1996. While Defendant received letters from Plaintiff after 1996 that referenced Mr. Sinas, Defendant has not submitted any evidence that it received communications or correspondence directly from Mr. Sinas related to Plaintiff's claim after 1996.

■■■ An attorney client relationship is formed when: "(1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and ... (a) the lawyer manifests to the person consent to do so." *Paradigm Ins. Co. v. Langerman Law Offices, P.A.,* 200 Ariz. 146, 149, 24 P.3d 593, 596 (Ariz.2001) (quoting Restatement (Third) of the Law Governing Lawyers § 14). There is no requirement that the relationship be subject to an express oral or written agreement and the relationship may be formed by an intent among the parties to create

an attorney client relationship or acquiescence. *Paradigm Ins. Co.*, 200 Ariz. at 148–149, 24 P.3d at 595–596. "As a practical matter, an attorney is deemed to be dealing with a client when 'it may fairly be said that because of other transactions an ordinary person would look to the lawyer as a protector rather than as an adversary.'" *Id.* at 149, 24 P.3d at 596 (internal quotations and citations omitted).

The fact that Plaintiff sought legal advice from Mr. Sinas after 1996 and Mr. Sinas seemingly provided such advice may be sufficient to form an attorney client relationship. However, the Court finds that a question of fact remains regarding the extent of any relationship between Mr. Sinas and Plaintiff after 1996. In addition, the fact that Plaintiff may have had an attorney client relationship with Mr. Sinas after 1996 and prior to 2010 does not establish that Plaintiff had knowledge of the extent of his attendant care benefits.

Defendant cites to *Hatch Companies Contracting, Inc. v. Arizona Bank*, 170 Ariz. 553, 826 P.2d 1179 (Ariz.Ct.App.1991) for the proposition that Mr. Sinas' knowledge of the extent of Plaintiff's attendant care benefits was imputed to Plaintiff. However, the court in *Hatch* addressed a client's knowledge that a *lis pendens* was executed and recorded by counsel. The court held that any knowledge on the part of counsel relating to the propriety of recording the *lis pendens* was imputed to the attorney's client, if the client was made aware by his counsel that he had filed the

*lis pendens* and counsel had a reason to know that the filing of the *lis pendens* was improper. *Id.* at 559, 826 P.2d at 1185.

In this case, Plaintiff has submitted evidence demonstrating that Mr. Sinas submitted improper requests for benefits to Defendant during the initial year of his representation of Plaintiff. As such, there is a question of fact as to whether Mr. Sinas had the requisite knowledge relating to Plaintiff's benefits to impute to his client. *See* (Doc. 224–1 at p. 3) (Mr. Sinas confused replacement services with attendant care benefits, when replacement services were subject to a three year limit while attendant care benefits were not subject to such a time restriction).[1]

Accordingly, the Court agrees with Magistrate Judge Bowman that a determination on when Plaintiff's bad faith claim accrued for statute of limitations purposes, in accordance with the discovery rule, should be left to the trier of fact. *See Doe*, 191 Ariz. at 323, 955 P.2d at 961 ("[w]hen discovery occurs and a cause of action accrues are usually and necessarily questions of fact for the jury.").

## V. Defendant's Motion for Partial Summary Judgment on Plaintiff's Claims Re: Sixteen Hours Per Day of Attendant Care. (Doc. 186).

Magistrate Judge Bowman recommended denying Defendant's Motion because there were genuine issues of material fact regarding Plaintiff's contract and

---

1. Defendant further argues that Plaintiff should not be permitted to use the attorney client privilege as a shield preventing Defendant from gathering information on what information Mr. Sinas knew regarding Plaintiff's eligibility for benefits and what information he imputed to Plaintiff and also as a sword claiming that Mr. Sinas' representation of Plaintiff was minimal and Plaintiff was never provided with any information about the benefits available to him by Mr. Sinas. This issue is not before this Court. There is presently a motion pending before Magistrate Judge Bowman, requesting a further deposition of Plaintiff specifically related to his representation by Mr. Sinas and the extent of information related to his benefits that was imputed to Plaintiff by Mr. Sinas. *See* (Doc. 308).

bad faith claims relating to whether he was entitled to 16 hours of attendant care.

Defendant objects to Magistrate Judge Bowman's recommendation. Specifically, Defendant argues that while Plaintiff submitted claim forms to Defendant for 16 hours of attendant care signed by his wife starting in 2011, both Plaintiff and his wife testified at their depositions that she had not been providing him with 16 hours of attendant care per day. Further, Plaintiff's wife admitted she did not review the forms before signing them and did not keep track of the time she spent providing services to Plaintiff.

■■■ As explained in the Report and Recommendation, in order for benefits to be payable, "(1) the expense must have been incurred, (2) the expense must have been for a product, service, or accommodation reasonably necessary for the injured person's care, recovery, or rehabilitation, and (3) the amount of the expense must have been reasonable." *Moghis v. Citizens Ins. Co. of America*, 187 Mich.App. 245, 247, 466 N.W.2d 290, 292 (App.1990). (Doc. 348, p. 1002).

■■■ Defendant acknowledges that Plaintiff submitted documentation demonstrating that his wife was providing him with 16 hours of attendant care per day. (Doc. 187–1 at pp. 31–46). While Plaintiff testified that he did not receive sixteen hours of attendant care on a daily basis from his wife as specifically listed in the forms for reimbursement, *see* (Doc. 220–2 at p. 63), his deposition further demonstrates that he had difficulty preparing the forms and the amount of care he needed in a given day for a given task varied. (Doc. 187–1 at pp. 15–29); (Doc. 220–2 at p., 63). Further, Plaintiff testified that there were days where he received more than 16 hours of attendant care and his wife was always on call to provide assistance. Accordingly, the Court agrees with Magis-

trate Judge Bowman that viewing the evidence in a light most favorable to the non-moving party, there are credibility issues and factual issues for the trier of fact to resolve relating to Plaintiff's claim for 16 hours of daily attendant care.

## VI. Defendant's Motion for Partial Summary Judgment Re: Alleged Hurdles to Plaintiff's Recovery of Benefits and Plaintiff's Claims for Bad Faith and Punitive Damages. (Doc. 188).

In this Motion, Defendant argues that it is entitled to judgment as a matter of law on several issues. Each issue shall be addressed below.

*Failure to Advise*

Magistrate Judge Bowman concluded that since there is no statutory provision in Michigan's No Fault Act requiring that an insurer explain benefits to its insured, the failure to explain or advise Plaintiff about his benefits cannot result in a breach of contract. The parties have not raised any objections to this recommendation and it is adopted.

Magistrate Judge Bowman further concluded that a failure to advise an insured about the extent of his benefits and his rights under the policy in a non-misleading way can support a claim of bad faith. *See Nardelli v. Metropolitan Group Property and Cas. Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (Ariz.Ct.App.2012). As such, Magistrate Judge Bowman reasoned that there were issues of fact regarding Defendant's explanation of benefits to Plaintiff that precluded summary judgment.

Defendant objects to this recommendation arguing that Plaintiff was represented by counsel and his attorney, Mr. Sinas' knowledge of the extent of Plaintiff's benefits are imputed to the Plaintiff. Accordingly, it was reasonable for Defendant to

assume that Plaintiff had been properly advised of his benefits.

■ Even if the imputed knowledge of his attorney was sufficient to excuse Defendant's failure to advise Plaintiff, the Court has previously addressed this argument in relation to the statute of limitations for Plaintiff's bad faith claims and concluded that there is a genuine question of fact regarding Plaintiff's relationship with Mr. Sinas after 1996 and any knowledge imputed to Plaintiff by Mr. Sinas. Accordingly, Magistrate Judge Bowman's recommendation related to this issue is adopted.

### Coordinated Care

Magistrate Judge Bowman recommended granting Defendant partial summary judgment on the issue of whether it acted properly by requiring Plaintiff to seek reimbursement from his private health insurer before seeking benefits from Defendant. Plaintiff has not objected to this recommendation and it is adopted.

### Reasonable and Customary Payment

Magistrate Judge Bowman recommended granting Defendant partial summary judgment on the issue of whether it acted properly by paying providers "reasonable and customary" amounts for services rendered rather than the amounts actually billed. Plaintiff has not objected to this recommendation and it is adopted.

### Documentation

Magistrate Judge Bowman recommended granting Defendant partial summary judgment on the issue of whether any of Plaintiff's claims were denied for failure to provide formal documentation. Plaintiff has not objected to this recommendation and it is adopted.

### Bad Faith

Magistrate Judge Bowman recommended denying Defendant's Motion for Partial Summary Judgment on the issue of bad faith because there existed a genuine issue of material fact as to whether Defendant acted in bad faith in the handling of Plaintiff's claim. Defendant has not objected to this recommendation and it is adopted.

### Punitive Damages

Magistrate Judge Bowman found that there was sufficient evidence from which the trier of fact could find punitive damages in this case and as such, recommended denying Defendant's Motion for Partial Summary Judgment regarding Plaintiff's punitive damages claim. Defendant objects to this recommendation.

■ In Arizona, an "insured may recover punitive damages on a bad faith claim." *Medical Protective Co. v. Pang,* 606 F.Supp.2d 1049, 1064 (D.Ariz.2008) (citing *Walter v. Simmons,* 169 Ariz. 229, 818 P.2d 214, 225–26 (Ariz.Ct.App.1991)). However, in an insurance bad faith case, punitive damages may not be awarded "unless the evidence reflects 'something more than the conduct necessary to establish the tort.'" *Rawlings,* 151 Ariz. at 162, 726 P.2d at 578 (finding that "plaintiff must prove that defendant's evil hand was guided by an evil mind") (citation omitted). An evil mind may be found where the defendant intended to injure the plaintiff or where defendant "consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Id.* "It has been stated that action justifying the award of punitive damages is 'conduct involving some element of outrage similar to that usually found in crime.'" *Id.* (citation omitted).

■ As such, "punitive damages will [only] be awarded on proof from which the

jury may find that the defendant was 'aware of and consciously disregarded a substantial and unjustifiable risk that' significant harm would occur." *Id.* While sufficient to establish the tort of bad faith, an indifference to facts or failure to investigate are insufficient to establish punitive damages. *Id.* To obtain summary judgment on the punitive damages issue, a defendant must show that no reasonable jury could find the requisite evil mind by clear and convincing evidence. *Holy Trinity Greek Orthodox Church v. Church Mut. Ins. Co.*, 476 F.Supp.2d 1135, 1140 (D.Ariz.2007) (citing *Thompson v. Better-Bilt Aluminum Products Co., Inc.*, 171 Ariz. 550, 832 P.2d 203, 211 (Ariz.1992)).

 Based on the evidence submitted in this case and viewed in a light most favorable to the Plaintiff, the Court finds that there is sufficient evidence from which a jury could find punitive damages by clear and convincing evidence.

## VI. Conclusion

The recommendations of Magistrate Judge Bowman are adopted. Plaintiff's contract claim is to be construed in accordance with Michigan law and as such, the one-year back rule limits his contract damages to one year prior to filing. Plaintiff's bad faith claim shall be construed in accordance with Arizona law and genuine issues of material fact remain as to whether the discovery rule tolls Arizona's two year statute of limitations on Plaintiff's bad faith claim.

Additionally, genuine issues of material fact remain on Plaintiff's contract and bad faith claims related to his entitlement to 16 hours of attendant care and Defendant's failure to advise Plaintiff of the extent of his benefits in good faith. However, there are no genuine issues of material fact and partial summary judgment is granted in relation to any claims related to coordinated care, reasonable and customary payment or a failure to provide documentation as referenced in this Order and the Report and Recommendation. Finally, partial summary judgment related to Plaintiff's bad faith claim and punitive damages claim is denied.

Accordingly, IT IS ORDERED:

1. The Report and Recommendation is ADOPTED. (Doc. 348).

2. Defendant's Motion for Partial Summary Judgment Re: Contract and Bad Faith Claims, (Doc. 108), is GRANTED IN PART.

3. Defendant's Motion for Partial Summary Judgment Re: Sixteen Hours Per Day of Attendant Care, (Doc. 186), is DENIED.

4. Defendant's Motion for Partial Summary Judgment Re: Alleged "Hurdles" to Plaintiff's Recovery of Benefits and Plaintiff's Claims for Bad Faith and Punitive Damages, (Doc. 188), is GRANTED IN PART.

5. Defendant's Motion for Leave to File a Reply, (Doc. 354), is DENIED. Dated this 30th day of June, 2014.

## REPORT AND RECOMMENDATION

LESLIE A. BOWMAN, United States Magistrate Judge.

Pending before the court are the defendant's three motions for partial summary judgment: (1) Defendant's Motion for Partial Summary Judgment Re: Contract and Bad Faith Claims (Doc. 108), (2) Defendant's Motion for Partial Summary Judgment on Plaintiff's Claims Re: Sixteen Hours Per Day of Attendant Care (Doc. 186), and (3) Defendant's Motion for Partial Summary Judgment Re: Alleged "Hurdles" to Plaintiff's Recovery of Benefits and Plaintiff's Claims for Bad Faith and Punitive Damages (Doc. 188).

The plaintiff in this action, Bryan Barten, was covered by a personal injury protection (PIP) policy issued by the defendant, State Farm, when he was involved in an automobile accident and rendered a quadriplegic. Barten claims State Farm breached this policy by failing to pay benefits due and failing to inform him of the extent of his benefits.

First, State Farm moves that the contract and bad faith claims should be construed in accordance with Michigan law. State Farm also moves that the court should limit the scope of the action pursuant to the one-year-back damages rule or pursuant to the appropriate statute of limitations.

State Farm moves for summary judgment on Barten's claim that State Farm improperly failed to pay for 16 hours per day of attendant care. State Farm further moves for summary judgment as to several "hurdles" that Barten asserts were raised by State Farm to unjustly deny benefits. Finally, State Farm argues the evidence is insufficient to support Barten's bad faith claim or his claim to punitive damages.

The case has been referred to Magistrate Judge Bowman for all pretrial matters pursuant to the local Rules of Practice. LRCiv 72.2. A hearing on the motion was held on March 11, 2014. At the hearing, the court was informed that the parties have reached a settlement regarding Barten's claim for car modifications and home modifications.

*Background*

In April of 1995, Barten was involved in an automobile accident in Lansing, Michigan and rendered a quadriplegic. (Doc. 169–1, p. 1) At the time of his injury, Barten was covered by his father's personal injury protection (PIP) policy pursuant to the Michigan No–Fault Act, which was issued by the defendant, State Farm. *Id.*, p. 2.

Immediately after the accident, Barten was represented by attorney George T. Sinas, who applied for PIP benefits on Barten's behalf. (Doc. 169–1, p. 4) In a letter sent to State Farm, Sinas explained that his office would keep the insurer informed as to Barten's course of treatment and would "be in contact with your office concerning attendant care, replacement services, home accommodations, etc." *Id.*, p. 5. Barten believes Sinas's office erroneously applied for certain benefits such as transfers and shopping assistance under the "replacement services" benefit rather than the "attendant care services" benefit. (Doc. 169–1, p. 4) The replacement services benefit is limited to three years. *Id.* State Farm filed a notice pursuant to A.R.S. § 12–2506(B) identifying Sinas as a nonparty at fault. (Doc. 30)

After his accident, Barten moved to Arizona to escape the harsh winters in Michigan. For a time, he was assisted by his girlfriend. (Doc. 169–1, pp. 19–20) State Farm paid her for her services including shopping and transferring Barton to and from his wheelchair. (Doc. 169–1, p. 20)

When his girlfriend moved away in 1997, Barton was at a loss as to how he would be able to cope with his day-to-day needs. *Id.*, pp. 19–21. He had problems opening bottles, getting dressed, changing his linens, taking out the garbage, and getting back into his wheelchair after a fall. (Doc. 169–1, pp 19–20) He contacted State Farm and asked if they would pay for someone else to do the jobs she formerly performed. *Id.* He explained he needed help with "everything." *Id.*, p. 21. He gave the examples "shopping" and "cleaning," but he was told those things are not covered. *Id.*, p. 21; (Doc. 169–3, pp. 27–29) He inferred that all benefits other than medical bills had ended as of April 21, 1998. *Id.*, p. 21; (Doc. 169–3, pp. 27–29)

Barton now believes State Farm's description of the limited scope of his benefits was erroneous. He thinks he was given this incorrect information because his girlfriend's services were improperly paid under the "replacement services" benefit. The "replacement services" benefit only lasts for a limited period of time after the accident. (Doc. 169–3, pp. 28–29) The "attendant care" benefit, however, is not so limited. *See* (Doc. 347, p. 42) (arguing that State Farm's documents indicate shopping is covered under attendant care)

In December of 2009, Barten was fitted with a peripherally inserted central catheter (PICC) intravenous line to treat an infection. (Doc. 169–1, p. 24) Barton called State Farm and explained he was unable to maintain the line and use it to administer his antibiotics. *Id.* When State Farm employee Ms. Parker asked if three hours of attendant care would help him, Barton gratefully accepted. *Id.* Barten obtained from his physician, Theodore Brysacz, a prescription for three hours of attendant care. (Doc. 186, p. 4) Under this "attendant care" benefit, State Farm paid for feeding, bathing, toileting, dressing, undressing, and transferring. (Doc. 186, p. 4)

In the Fall of 2011, Barten met Andy Zimmer in Las Vegas. (Doc. 169–1, p. 18) Zimmer had a similar injury and was also receiving benefits from a PIP Michigan no-fault policy. *Id.* Barten credits Zimmer with informing him of the extent of his PIP benefits. *Id.*, p. 19.

Shortly afterwards, Barten requested State Farm provide 16 hours per day of attendant care. (Doc. 169–1, p. 18) Barten obtained from his physician, Theodore Brysacz, a prescription for 16 hours of attendant care. (Doc. 186, p. 5)

State Farm refused to pay for 16 hours of attendant care because Barten's medical condition had not changed since the time he claimed three hours of care. (Doc. 169–1, p. 25) Barten argues he did not ask for three hours of care because he believed it was the amount he needed, but rather accepted that amount because Ms. Parker told him State Farm would pay for that amount of care. (Doc. 169–1, p. 12)

On April 13, 2012, Barten filed this action in Pima County Superior Court claiming breach of contract, insurance bad faith, and violation of the Medicare Second Payer Act, 42 U.S.C. § 1395y(b)(3)(A). (Doc. 1–3, pp. 2–10) It was removed by the defendant on May 22, 2012. (Doc. 1) The medicare claim was dismissed by stipulation. (Doc. 143)

Barten claims State Farm breached its duty to disclose all the benefits available under his policy. (Doc. 1–3, pp. 2–10) He further claims State Farm has not paid all benefits due. *Id.* For example, State Farm is only paying for three hours of attendant care per day instead of the 16 hours recommended by Barten's physician. *Id.*

*Standard of Review: Summary Judgment*

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). There is just such a dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The initial burden rests on the moving party to point out the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the moving party has the burden of proof at trial, that party carries its initial burden by

presenting evidence showing no reasonable trier of fact could find for the nonmoving party. *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986); *U.S. v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir.1991). If the moving party does not have the burden of proof at trial, that party carries its initial burden either by presenting evidence negating an essential element of the nonmoving party's claim or demonstrating the nonmoving party cannot meet its burden at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Nissan Fire & Marine Insurance v. Fritz,* 210 F.3d 1099 (9th Cir.2000).

Once satisfied, the burden shifts to the nonmovant to demonstrate through production of probative evidence that an issue of fact remains to be tried. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Thomas v. Douglas,* 877 F.2d 1428, 1430 (9th Cir.1989).

When considering a motion for summary judgment, the court is not to make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). Instead, the court should draw all inferences in the light most favorable to the nonmoving party. *Id.* That said, it remains the job of the nonmoving party "to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.1996).

(1) *Defendant's Motion for Partial Summary Judgment Re: Contract and Bad–Faith Claims* (Doc. 108)

*Contract Claim: Choice of Law*

State Farm argues that Barten's breach of contract claim should be decided pursuant to Michigan law. Barten agrees. This aspect of the motion is uncontested and should be granted. *See* (Doc. 347, pp. 7, 43)

*Contract Claim: One–Year–Back Limitation on Damages*

State Farm argues Barten's contract recovery is limited by the one-year-back rule, M.C.L. § 500.3145(1), which limits its recovery to losses incurred within one year of the filing of the action. The court agrees.

The one-year-back rule limits the damages that a potential plaintiff may recover in an action for recovery of personal protection insurance benefits. Simply put, "the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced." M.C.L. § 500.3145(1).

"The Michigan Supreme Court has confirmed that this is a damages limitation provision, and not a statute of limitations." *Buntea v. State Farm Mut. Auto Ins. Co.,* 467 F.Supp.2d 740, 749 (E.D.Mich.2006). "Therefore, traditional judicial tolling doctrines ... such as insanity or infancy of a party, do not apply to the one year back rule." *Id.* The court, nevertheless, retains equitable authority to extend the recovery period in "unusual circumstances such as fraud or mutual mistake." *Id.*

Barten argues summary judgment on this issue is not appropriate because there is evidence from which a reasonable trier of fact could find equitable estoppel. (Doc. 169, p. 6)

"The principle of estoppel is an equitable defense that prevents one party to a contract from enforcing a specific provision contained in the contract." *City of Grosse Pointe Park v. Michigan Munic-*

*ipal Liability and Property Pool,* 473 Mich. 188, 203–204, 702 N.W.2d 106, 116 (2005). "For equitable estoppel to apply, [Barten] must establish that (1) [State Farm's] acts or representations induced him to believe [some fact about his coverage], (2) [Barten] justifiably relied on this belief, and (3) [Barten] was prejudiced as a result of [his] reliance. . . ." *Id.* Barten argues first that equitable estoppel could be found from State Farm's failure to explain his benefits.

■ "Silence or inaction may form the basis for an equitable estoppel only where the silent party had a duty or obligation to speak or take action." *Conagra, Inc. v. Farmers State Bank,* 237 Mich.App. 109, 141, 602 N.W.2d 390, 406 (App.1999). Here, however, there is no evidence that State Farm had such a duty to explain under Michigan law. *See Schwein v. State Farm Mut. Auto. Ins. Co.,* 2013 WL 4605892, *4 (E.D.Mich.2013) ("Indeed, as the court acknowledged in *Paquette* [*v. State Farm Mut. Auto Ins. Co.,* 2009 WL 2168918, at *3 (Mich.Ct.App.2009) ], there is no statutory obligation to explain benefits under the No Fault Act.").

In the alternative, Barton alludes to the fact that State Farm had an internal policy of explaining benefits. He does not, however, provide any evidence that Barten was aware of this policy and reasonably relied on it.

Barten states in a conclusory fashion that estoppel could be found from State Farm's affirmative misrepresentation of the extent of his benefits. He may be referring to evidence that he contacted State Farm when his girlfriend moved away and asked if he could get someone to help him with the tasks that she previously performed. (Doc. 169–1, pp. 19–20) He was told, however, that those things are not covered, and he inferred that all benefits other than medical bills had ended as of April 21, 1998. *Id.,* p. 21; (Doc. 169–3, pp. 27–29)

■ In order for this statement to trigger equitable estoppel, however, Barton must show that it induced him to believe falsely that certain benefits were not covered and that he was reasonable in his belief. The Michigan Supreme Court, however, has stated that reliance on an insurer's statement that contradicts the terms of the policy cannot induce reasonable reliance because the insured is presumed to have read the terms of the insurance policy. *Cooper v. Auto Club Ins. Ass'n,* 481 Mich. 399, 415, 751 N.W.2d 443, 451–52 (2008); *see, e.g., Brown v. Travelers Indem. Co.,* 2011 WL 41911, *7 (M.D.Fla.2011) (One-year-back rule applied even where the defendant "sought to and did mislead Plaintiff as to the nature and scope of attendant care benefits under the no-fault law" because any reliance on the defendant's communications "appears unjustified as a matter of law.").

Barten's contract recovery is limited by the one-year-back rule, M.C.L. § 500.3145(1). State Farm is entitled to partial summary judgment on this issue.

*Bad Faith Claim: Choice of Law*

State Farm argues Barten's bad faith claim must be dismissed because the court should apply Michigan law, and Michigan does not recognize an action for insurer bad faith. The court finds to the contrary that this claim should be construed in accordance with Arizona law.

A federal court sitting in diversity applies the choice of law rules of the forum state. *Patton v. Cox,* 276 F.3d 493, 495 (9th Cir.2002). "Arizona courts follow the Restatement (Second) of Conflict of Laws (hereinafter 'Restatement') as a guide in choice of law questions." *Id.* (Punctuation modified) Where the plaintiff brings a bad faith insurance claim, the court should con-

sider Restatement § 145, which is applicable to tort issues in general, and Restatement § 146, which is specifically directed toward personal injury actions. *Bates v. Superior Court of State of Ariz., In and For Maricopa County,* 156 Ariz. 46, 49, 749 P.2d 1367, 1370 (1988).

Restatement § 145 "provides that courts are to resolve tort issues under the law of the state having the most significant relationship to both the occurrence and the parties with respect to any particular question." *Id.* The following factors are ordinarily the most important:

1. The place where the injury occurred;

2. The place where the conduct causing the injury occurred;

3. The domicile, residence, nationality, place of incorporation and place of business of the parties;

4. The place where the relationship, if any, between the parties is centered. *Id.*

In this case, the injury occurred in Arizona where the plaintiff experienced mental, physical, and financial harm as a result of State Farm's alleged improper failure to provide benefits. *Bates,* 156 Ariz. at 49, 749 P.2d at 1370. Barten argues State Farm violated the covenant of good faith and fair dealing in a number of ways, but his strongest argument is that State Farm gave him misleading information about the extent of his benefits. This conversation took place when Barten was living in Arizona.

The conduct causing the injury occurred mainly in Michigan where Barten's claims were handled. (Doc. 108–1, p. 3)

As to factor 3, Barten is domiciled in Arizona, while State Farm is domiciled in Illinois where it is incorporated and has its principal place of business. (Doc. 108, p. 13) Arizona courts, however, give more weight to the residence of the tort victim where, as here, the injury is to the plaintiff's personal interests. *Bates,* 156 Ariz. at 50, 749 P.2d at 1371.

Factor 4 asks where the relationship between the parties is centered. The relationship between the parties here is the relationship between an insurer and an insured. One could therefore find the relationship "centered" between their two domiciles, Arizona and Illinois. Arizona is where Barten incurred medical expenses and received benefits. Illinois is the home of the insurer, the place where Barten directed his claim requests, and the place from which State Farm communicated to him. (Doc. 108–2, pp. 91–97, 103, 105–110)

Having examined these factors, a court might be tempted to compare in a straightforward way the number of factors favoring each alternative state. The court's inquiry, however, "is qualitative, not quantitative." *Bates,* 156 Ariz. at 49, 749 P.2d at 1370. "The court must evaluate the contacts according to their relative importance with respect to the particular issue." *Id.*

The Restatement gives the following specific qualitative guideline for personal injury cases:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement § 146. The Restatement § 6 gives the following factors relevant to the choice of law determination:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law, certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Most of these factors are neutral and do not provide a reason for overriding the general rule of Restatement § 146. *See Bates,* 156 Ariz. at 50, 749 P.2d at 1371. Factor (d), however, "the protection of justified expectations," bears closer analysis. State Farm argues that Michigan law should apply because the Michigan No-Fault Act was enacted in reliance on Michigan's prohibition on bad faith claims. (Doc. 108, p. 15); (Doc. 347, p. 19) It would be unfair to require insurance companies to pay No-Fault benefits without enforcing the prohibition against bad faith claims which acts as an economic offset. *Id., see also Bates,* 156 Ariz. at 50, 749 P.2d at 1371.

The cases cited by State Farm, however, do not explicitly state the No-Fault Act was created in reliance on a prohibition against bad faith claims. In fact, Michigan recognized a related cause of action, the Michigan Consumer Protection Act, which permitted noncontract causes of action to be brought alongside a No-Fault contract claim. *See Buntea v. State Farm Mut. Auto Ins. Co.,* 467 F.Supp.2d 740, 743–45 (E.D.Mich.2006).

Moreover, national insurers such as State Farm know that insureds sometimes relocate and know "that it might be required to perform its obligations as an insurer in any state in the union." *Bates,* 156 Ariz. at 51, 749 P.2d at 1372. "It could

not justifiably expect that every aspect of its conduct would be governed by the law of the state in which the contract originally was made." *Id.*

Because no other state has "a more significant relationship under the principles stated in § 6 to the occurrence and the parties," the general rule should apply, and the law of Arizona should be applied to Barten's bad faith claim. Restatement § 146, *see, e.g., Bates,* 156 Ariz. at 47–48, 749 P.2d at 1368–69 (Arizona law applied to bad faith insurance claim where the insured was covered by a Michigan no-fault policy, was a Michigan resident when the accident occurred, began receiving benefits in Michigan, but later moved to Arizona where benefits were eventually terminated.).

*Bad Faith Claim: Statute of Limitations*

Barton's bad faith claim should be construed in accordance with Arizona law. Consequently, Arizona's two-year tort statute of limitations applies to his claim. Restatement § 142(a); Ariz.Rev.Stat. § 12–542.

State Farm argues the one-year-back damages rule should apply to Barton's bad faith claim. The one-year-back rule, however, only applies to "[a]n action for recovery of personal protection insurance benefits payable under this chapter...." *Cooper v. Auto Club Ins. Ass'n,* 481 Mich. 399, 406, 751 N.W.2d 443, 447 (2008). Barten's bad faith claim seeks damages apart from those to which he is entitled under the Michigan statute. The one-year-back rule does not apply. *See, e.g., Basirico v. State Farm Mut. Auto. Ins. Co.,* 2008 WL 2446906, *7 (E.D.Mich. 2008) (One-year-back rule "does not limit the recovery of non-contractual damages that do not represent lost no-fault benefits.").

Barton argues this court should apply the six-year statute of limitations that applies to the Michigan Consumer Protection Act. (Doc. 169, p. 12) Barton did not, however, bring an action pursuant to this statute.

Barton argues in the alternative that the discovery rule tolls the Arizona statute of limitations. The court concludes that application of the discovery rule should be left to the trier of fact.

"[U]nder the common law discovery rule a cause of action does not accrue until the plaintiff knows or with reasonable diligence should know the facts underlying the cause." *Manterola v. Farmers Ins. Exchange,* 200 Ariz. 572, 576, 30 P.3d 639, 643 (App.2001). Here, Barton claims State Farm acted in bad faith by denying him PIP benefits.

"Arizona law implies a covenant of good faith and fair dealing in every contract." *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 490, 38 P.3d 12, 28 (2002). This covenant "prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Id.* The covenant is breached if "one party exercises discretion retained or unforeclosed under a contract in such a way as to deny the other a reasonably expected benefit of the bargain." *Id.* at 492, 38 P.3d at 30.

If the plaintiff claims the defendant improperly denied a particular claim, the plaintiff "must show the absence of a reasonable basis for denying benefits and that the insurance company either knew or recklessly disregarded the fact that it did not have a reasonable basis for denying

benefits." *Madsen v. Fortis Benefits Ins. Co.,* 2006 WL 3771803, *9 (D.Ariz.2006).

Because the discovery rule mitigates the harshness of statutory limitations by equitably considering the facts of each case, the question of when a plaintiff discovered or should have discovered facts giving rise to a claim is "usually and necessarily" left to the jury. *Doe v. Roe,* 191 Ariz. 313, 323, 955 P.2d 951, 961 (1998).

Barten's complaint was originally filed on April 13, 2012. (Doc. 1, p. 1) State Farm argues the two-year statute of limitations precludes any claims that accrued more than two years before. Assuming the discovery rule applies here, State Farm argues all of Barten's bad faith claims are time-barred except for his claim for sixteen hours of attendant care.

State Farm argues specifically that Barton may not assert claims arising out of (1) his need for attendant care prior to his request for 16 hours, (2) his application for a handicap-accessible van in 2005–2006, (3) State Farm's practice of requiring receipts and prescriptions, (4) State Farm's insistence that Barten's claims for payment be coordinated with his private health insurer, (5) State Farm's denial of a Cialis prescription, and (6) State Farm's payments limited to "usual and customary" charges. Even if the discovery rule were applied, State Farm argues, these claims accrued more than two years before the complaint was filed.

Barten acknowledges that three of these issues [1] are not part of his bad faith claim—the van issue, the coordination of claims issue, and the "usual and customary" payment issue. He maintains, however, that his remaining claims are subject to the discovery rule and therefore are not

---

1. At the hearing, the court was informed that these issues are no longer contested. (Doc. 347, p. 5)

time-barred. The issue of discovery, he argues, must be reserved for the trier of fact.

The court agrees. While State Farm presents evidence from which one might rule in its favor, it does not show there is no genuine issue of material fact and it is entitled to judgment as a matter of law.

For example, State Farm argues that Barton's claim for attendant care is barred because this claim accrued at least by the time State Farm began giving him three hours of attendant care. This, State Farm reasons, put Barten on notice that he should have been receiving attendant care all along. Barten himself stated that when State Farm's representative offered him three hours of attendant care, his understanding of his benefits changed. Barten explained, "that's how I became aware that—sort of, wow, I was entitled to attendant care this whole time." (Doc. 203, p. 2)

The term attendant care, however, apparently encompasses a number of different services. *See* (Doc. 169, p. 2) Accordingly, the fact that State Farm would pay for someone to help him with his PICC line for three hours per day did not necessarily, as a matter of law, provide Barten with sufficient information from which the court must conclude that he knew or with reasonable diligence should have known he was entitled to additional services apart from his medical needs.

Moreover, Barten can provide other evidence that he was in the dark about the extent of his benefits. He made a telephone call to State Farm when his girlfriend moved away and he was having trouble with many aspects of his day-to-day living. (Doc. 169–1, pp. 19–21) He asked the State Farm representative if they would pay for someone else to do the jobs she formerly performed. *Id.* He said he needed help with "everything." *Id.*, p.

21. He gave the examples "shopping" and "cleaning," but he was told those things are not covered. *Id.*, p. 21; (Doc. 169–3, pp. 27–29) He inferred from this call that attendant care was no longer available for him. *Id.*, p. 21; (Doc. 169–3, pp. 27–29)

Barten can also present testimony about a meeting he had in the Fall of 2011 when he met Andy Zimmer in Las Vegas (Doc. 169–1, p. 18) Zimmer had a similar injury and was also receiving benefits from a PIP Michigan no-fault policy. *Id.* Barten credits Zimmer with explaining to him the extent of his benefits.

A reasonable trier of fact could find from this evidence that Barten was not aware of the extent of his benefits and therefore did not apply for benefits to which he was entitled.

The discovery issue should be left to the trier of fact. State Farm's motion for summary judgment on this issue should be denied. *See also Logerquist v. Danforth,* 188 Ariz. 16, 22, 932 P.2d 281, 287 (App. 1996) ("In Arizona ... the statute of limitations defense is not favored ...."); *see, e.g., Doe v. Roe,* 191 Ariz. 313, 323–25, 955 P.2d 951, 961–63 (1998) (Although the plaintiff "had her first flashback of abuse," "remembered she had been molested by her father," and began therapy, there was a genuine issue of material fact concerning application of the discovery rule.); *In re Jackson Nat. Life Ins. Co. Premium Litigation,* 107 F.Supp.2d 841, 856 (W.D.Mich. 2000) (Although terms in the policy were contradicted by representations of the sales agent and terms in the application, there was a genuine issue of material fact concerning application of the discovery rule.).

To summarize, Barten's contract claim should be construed according to Michigan law. The one-year-back rule limits his contract damages to one year prior to

filing. Barten's bad faith claim should be construed according to Arizona law. Genuine issues of material fact remain as to whether the discovery rule tolls Arizona's two-year statute of limitations.

(2) *Defendant's Motion for Partial Summary Judgment on Plaintiff's Claims Re: Sixteen Hours Per Day of Attendant Care* (Doc. 186)

In its second motion for partial summary judgment, State Farm argues judgment should be entered as a matter of law on Barten's claim that he is entitled to sixteen hours of attendant care.

First, State Farm argues "Barten has no legitimate medical necessity for sixteen hours per day of attendant care." (Doc. 186) Accordingly, his contract claim must fail, and his bad faith claim also must fail to the extent it derives from this benefit. (Doc. 186)

The PIP policy covers "reasonable charges incurred for reasonably necessary, products, services and accommodations for an injured person's care, recovery, or rehabilitation." (Doc. 186, p. 9) (citing M.C.L. § 500.3107(1)(a)) State Farm argues that the evidence in his case fails to show that 16 hours of attendant care is "reasonably necessary." State Farm cites evidence from which the trier of fact could find in its favor. For example, when Barten was discharged from the Mary Free Bed Hospital in August of 1995 following his initial post-accident rehabilitation, "his discharge summary reported that 'Bryan was taking personal responsibility for all of his care prior to being discharged.'" (Doc. 186, p. 3) Barten stated in an interview in 1998 that "I was able to get my independence back. I don't need anyone to take care of me because I have my hands." *Id.* Dr. Kelly, a board-certified physician in physical medicine and rehabilitation, conducted an independent medical examination and concluded that Barten needed only three hours of attendant care. And, while Barten's physician, Dr. Brysacz, prescribed 16 hours of attendant care, he "admitted" that Barten's condition had not changed materially since he prescribed only three hours of attendant care.

On a motion for summary judgment, however, the court does not weigh the evidence. Instead, the moving party must show that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.

Here, however, there is sufficient evidence from which a reasonable trier of fact could find in Barten's favor. Barten's physician, Brysacz, believes Barten requires 16 hours of attendant care based on his physical condition and the nature of his injury. (Doc. 186, p. 5) Woodard, Barten's rehabilitation expert, is in agreement. (Doc. 220, p. 11) Barten himself will give testimony that this level of care is necessary. Accordingly, there is a genuine issue of material fact, and State Farm is not entitled to summary judgment.

Contrary to State Farm's arguments, a reasonable trier of fact could conclude the optimistic statements made by the Mary Free Bed Hospital in August of 1995 were biased because that hospital obtains much of its trade from insurers like State Farm. Brysacz's earlier prescription for only three hours of attendant care does not, as a matter of law, make his later prescription for 16 hours unworthy of credence. A reasonable trier of fact could find that the first prescription was written for three hours, not because it accurately characterized Barten's level of need, but because that was the benefit State Farm was willing to provide. As for Barten's rosy assessment that "I don't need anyone to take care of me because I have my hands," a reasonable trier of fact could find this simply false bravado from a man with C6–7

quadriplegia. (Doc. 187–4, p. 3) It is apparently undisputed that Barten cannot even put himself back into his wheelchair if he falls out.

State Farm further argues that it is entitled to judgment as a matter of law on the bad faith claim because Barten cannot prove it acted objectively and subjectively in bad faith. (Doc. 186, p. 8) (citing *Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 838 P.2d 1265, 1268 (1992)). Again, State Farm cites evidence from which the trier of fact could find in its favor rather than explaining why there is no genuine issue of material fact.

Also, there is evidence from which one could find that State Farm acted in bad faith. One could find State Farm, as an expert in administering No–Fault benefits, understands the difference between replacement services and attendant care. One could further find State Farm unreasonably terminated Barten's benefits, not because they were not covered, but because they were erroneously classified as replacement services. Further, one could conclude that when Barten called State Farm to see if his benefits could be restored, State Farm gave misleading information to Barten in reckless disregard for how this might affect his ability to seek benefits. *See Miel v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz. 104, 110, 912 P.2d 1333, 1339 (App.1995). A reasonable trier of fact could find that State Farm acted in bad faith. Partial summary judgment should be denied on this issue.

State Farm further argues it is entitled to partial summary judgment because Barten cannot prove he incurred the attendant care expenses for which he seeks payment. In general, for benefits to be payable "(1) the expense must have been incurred, (2) the expense must have been for a product, service, or accommodation reasonably necessary for the injured person's care, recovery, or rehabilitation, and (3) the amount of the expense must have been reasonable." *Moghis v. Citizens Ins. Co. of America*, 187 Mich.App. 245, 247, 466 N.W.2d 290, 292 (App.1990). State Farm concedes, however, that Barten has provided State Farm with attendant-care forms stating that his wife, Jessica Van der Lede, did provide him with 16 hours of attendant care per day. State Farm argues that irregularities in the forms render them unworthy of credence, but while the trier of fact might very well agree, the court does not resolve credibility issues on a motion for summary judgment. (Doc. 186, pp. 7, 11, 14)

Finally, State Farm argues Barten's bad faith claim fails because he intentionally interfered with its investigation of his claim. (Doc. 186, pp. 15–16) In particular, State Farm alleges that Barten instructed his doctor not to respond to State Farm's inquiries concerning his prescription for 16 hours of attendant care.

Barten does not dispute State Farm's allegation. He argues, however, that the information State Farm already had by this time was more than sufficient to establish his need for 16 hours of attendant care. Accordingly, there was no need for additional inquires. This issue also must be determined by the trier of fact. *But see Jackson v. Allstate Ins. Co.*, 780 F.Supp.2d 781, 792 (S.D.Ind.2011) (Insurer did not cause unfounded delay in payment where the plaintiff and counsel caused delay in obtaining the medical records.).

Genuine issues of fact remain on Barten's contract and bad faith claims that he is entitled to 16 hours of attendant care. (3) *Defendant's Motion for Partial Summary Judgment Re: Alleged "Hurdles" to Plaintiff's Recovery of Benefits and Plaintiff's Claims for Bad Faith and Punitive Damages* (Doc. 188).

State Farm argues it is entitled to judgment as a matter of law on the issues of

(a) failing to advise Barten of the extent of his benefits, (b) requiring Barten to submit his medical expenses to his private health insurer first before seeking benefits, (c) failing to pay more than "reasonable and customary" amounts, and (d) requiring reasonable documentation before paying claims for reimbursement. State Farm also moves for summary judgment on the issues of bad faith and punitive damages.

*- Failure to Advise*

State Farm moves for summary judgment on Barten's claim that it failed to advise him of the extent of his benefits.

██ State Farm is partially correct. There is no statutory provision in the No–Fault Act requiring the insurer to explain benefits to the insured. Accordingly, failure to explain cannot result in a breach of contract. *See Schwein v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 4605892, *4 (E.D.Mich.2013) ("Indeed, as the court acknowledged in *Paquette,* there is no statutory obligation to explain benefits under the No Fault Act.").

██ The bad faith claim, however, should be construed in accordance with Arizona law, and in Arizona, failure to explain benefits can support bad faith liability. *Nardelli v. Metropolitan Group Property and Cas. Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (App.2012) ("[T]he duty of good faith encompasses some obligation to inform the insured about the extent of coverage and his or her rights under the policy and to do so in a way that is not misleading."); *see also Rawlings v. Apodaca,* 151 Ariz. 149, 155, 726 P.2d 565, 571 (1986) (The insurance company "has some duties of a fiduciary nature ... [e]qual consideration, fairness and honesty are among them.").

State Farm argues it has no duty to advise Barten about his policy benefits because all benefits are described in the no-fault statute and "all persons are presumed to know the contents of the statutory provision." *Cooper v. Arizona Western College Dist. Governing Bd.*, 125 Ariz. 463, 467, 610 P.2d 465, 469 (App.1980). The *Cooper* court, however, made that statement in the context of holding that a college district governing board has no duty to advise its employees that they have a right "to demand consideration of employment matters at a public meeting." *Id.* The *Cooper* court was not construing the duty of an insurer to act in good faith toward its insured. *Cooper* is distinguishable.

State Farm further argues it was reasonable for it to assume that Barten was being advised as to his rights under the statute by his lawyer, George Sinas. Therefore, it acted reasonably by not further advising Barten of his no-fault benefits. The extent of this relationship, however, is contested. Accordingly, this issue remains for the trier of fact

*Coordinated Care*

State Farm also argues Barten's policy had "coordinated" coverage, and it acted properly by requiring Barten to seek reimbursement from his private health insurer before seeking benefits from State Farm. It further argues it acted properly in denying coverage for a claim that Barten's private insurer would not cover because Barten failed to seek preauthorization.

The no-fault act allows insureds the option of obtaining "coordinated" coverage in exchange for reduced premium rates. *Tousignant v. Allstate Ins. Co.*, 444 Mich. 301, 304, 506 N.W.2d 844, 846 (1993). State Farm asserts Barten has this "coordinated" coverage and must submit his medical claims first to his health insurance provider, CIGNA. (Doc. 188–1, p. 4)

Assuming State Farm is correct about Barten's particular policy, and Barten does not dispute State Farm's characterization of his policy, State Farm is entitled to partial summary judgment on this issue. State Farm's insistence that Barten first seek reimbursement from his employer provided health insurance, CIGNA, is in accordance with the contract. And, it is difficult to see how State Farm's insistence that Barten comply with the terms of the contract would support a bad faith claim.

Barten agrees that these actions by State Farm are not part of his bad faith claim. (Doc. 219, p. 11) He argues vaguely that the provision of the Michigan no-fault law requiring "coordinated coverage" conflicts with ERISA. He does not, however, explicitly explain this argument.

An unambiguous coordination of benefits (COB) clause in an ERISA plan does take priority over the COB clause in the no-fault policy. *Auto Club Ins. Ass'n v. Frederick & Herrud, Inc.,* 443 Mich. 358, 387, 505 N.W.2d 820, 833 (1993). Here, however, there is no evidence that Barten's CIGNA policy has a conflicting COB clause.

State Farm is entitled to partial summary judgment on this issue.

### *"Reasonable and Customary" Payment*

State Farm argues that it acted properly by paying providers "reasonable and customary" amounts for services rendered rather than the amounts billed. (Doc. 188, p. 7) State Farm informed Barten of this policy condition and assured him that under the statute he should not be responsible for the unpaid difference. (Doc. 188, pp. 8–9)

Barten affirmatively states that State Farm's payment of "reasonable and customary" amounts is not part of his bad faith claim. (Doc. 219, p. 11, n. 3) And, he does not argue State Farm's payment policy is a breach of the contract. *Id.* State

Farm is entitled to partial summary judgment on this claim.

### *Documentation*

State Farm argues Barten cannot show he was denied benefits because of a failure to provide State Farm with the requested documentation.

According to State Farm, an insurer is required only to reimburse its insured for "reasonable charges incurred for reasonably necessary products, services and accommodations...." (Doc. 188, p. 9) In order to make this determination of reasonableness, it asks its insureds to provide documentation of the products and services for which the insured seeks reimbursement. This procedure, State Farm argues is the best way to implement the statute. Further, State Farm asserts that Barten cannot show any of his claims for attendant care reimbursement were denied for failure to provide formal documentation. State Farm seeks partial summary judgment on the issue of documentation.

Barten does not address this issue directly, but he refers the court to his response to State Farm's motion for partial summary judgment on the 16–hour attendant care issue. It appears that Barten will attempt to show at trial that he provided sufficient information to prove his claims were reasonable. (Doc. 220, pp. 11–16) He does not say he will attempt to prove that his claims were denied purely because his proof was not supplied on the proper forms. Accordingly, State Farm is entitled to partial summary judgment on this narrow issue.

### *Bad Faith and Punitive Damages*

State Farm argues it is entitled to summary judgment on the issue of bad faith and punitive damages.

"[T]here is a legal duty implied in an insurance contract that the insurance com-

pany must act in good faith in dealing with its insured on a claim, and a violation of that duty of good faith is a tort." *Deese v. State Farm Mut. Auto. Ins. Co.,* 172 Ariz. 504, 506–507, 838 P.2d 1265, 1267–1268 (1992). "There are two elements to the tort of bad faith: (1) that the insurer acted unreasonably toward its insured, and (2) that the insurer acted knowing that it was acting unreasonably or acted with such reckless disregard that such knowledge may be imputed to it." *Miel v. State Farm Mut. Auto. Ins. Co.,* 185 Ariz. 104, 110, 912 P.2d 1333, 1339 (App.1995). Although bad faith actions are often brought because the insurer denied a specific insurance claim, bad faith may result from any act that breaches the implied covenant of good faith and fair dealing, even acts that do not breach an express term in the policy. *Deese,* 172 Ariz. at 509, 838 P.2d at 1270. A plaintiff "need not prevail on the contract claim in order to prevail on the bad faith claim . . . ." *Id.*

As the court explained above in the context of the 16–hour attendant care claim, a reasonable trier of fact could return a verdict for Barten on his bad faith claim. Accordingly, there is a genuine issue of material fact, and State Farm is not entitled to partial summary judgment.

"[T]o obtain punitive damages, plaintiff must prove that defendant's evil hand was guided by an evil mind." *Rawlings v. Apodaca,* 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986). "The evil mind which will justify the imposition of punitive damages may be manifested in either of two ways." *Id.* "It may be found where defendant intended to injure the plaintiff." *Id.* "It may also be found where, although not intending to cause injury, defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Id.*

"Summary judgment on the question of punitive damages is inappropriate if a reasonable jury could find the requisite evil mind by clear and convincing evidence." *Demetrulias v. Wal–Mart Stores Inc.,* 917 F.Supp.2d 993, 1010–1011 (D.Ariz.2013) (*quoting Thompson v. Better–Bilt Aluminum Prods. Co.,* 171 Ariz. 550, 558, 832 P.2d 203, 211 (1992)). "The evil mind can be shown by some combination of evil actions, spiteful motives, or outrageous, oppressive or intolerable conduct that creates a substantial risk of tremendous harm to others." *Id.* (punctuation modified) "Put another way, the court considers the nature of the defendant's conduct, including the reprehensibility of the conduct and the severity of the harm likely to result, as well as the harm that has occurred, the duration of the misconduct, the degree of defendant's awareness of the harm or risk of harm, and any concealment of it." *Id.*

As the court explained above, a reasonable trier of fact could find State Farm terminated Barten's attendant care knowingly or recklessly, that the benefit was necessary to Barten's physical and mental health, and that its absence entailed significant risk of harm to a person with limited physical abilities. *See, e.g.,* (Doc. 169–1, pp. 18–19) (describing how after his replacement services were terminated, Barten lay in urine soaked bedding because he was unable to change his linen without help) There is sufficient evidence from which the trier of fact could find punitive damages appropriate by clear and convincing evidence. Summary judgment should be denied on this issue. *See, e.g., Daly v. Royal Ins. Co. of America,* 2002 WL 1768887, *18 (D.Ariz.2002) (Summary judgment on the issue of punitive damages was denied where there was evidence that the insurer intentionally concealed its understanding that the insured was entitled to higher coverage limits.).

State Farm is entitled to partial summary judgment on the issues of (1) failure to advise (to the extent it is raised as a contract claim), (2) coordinated care, (3) "reasonable and customary" payment, and (4) documentation. There remain genuine issues of material fact on Barten's bad faith claim and his claim for punitive damages.

*RECOMMENDATION:*

The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order as follows:

(1) GRANTING in PART the Defendant's Motion for Partial Summary Judgment Re: Contract and Bad–Faith Claims. (Doc. 108) Barten's contract claim should be construed according to Michigan law. The one-year-back rule limits his contract damages to one year prior to filing. Barten's bad faith claim should be construed according to Arizona law. Genuine issues of material fact remain as to whether the discovery rule tolls Arizona's two–year statute of limitations.

(2) DENYING the Defendant's Motion for Partial Summary Judgment on Plaintiff's Claims Re: Sixteen Hours Per Day of Attendant Care. (Doc. 186) Genuine issues of material fact remain on Barten's claim to 16 hours of attendant care.

(3) GRANTING in PART the Defendant's Motion for Partial Summary Judgment Re: Alleged "Hurdles" to Plaintiff's Recovery of Benefits and Plaintiff's Claims for Bad Faith and Punitive Damages. (Doc. 188) State Farm is entitled to partial summary judgment on the issues of (a) failure to advise (to the extent it is raised as a contract claim), (b) coordinated care, (c) "reasonable and customary" payment, and (d) documentation. There remain genuine issues of material fact on Barten's bad faith claim and his claim for punitive damages.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within 14 days of being served with a copy of this report and recommendation. If objections are not timely filed, the party's right to de novo review may be waived. The Local Rules permit the filing of a response to an objection. They do not permit the filing of a reply to a response.

DATED this 21st day of March, 2014.